Sims vs. Walshe.

## No. 12,099.

### PHILIP H. SIMS vs. BLANEY T. WALSHE.

#### ON MOTION TO DISMISS.

When the petition avers the value of the property sued for is sufficient to give this court jurisdiction, and no issue has been raised on that point in the lower court, the motion to dismiss the appeal will not prevail, unless the record clearly shows there is no jurisdiction.

Least of all, will the motion be favored when the appellee has affirmed our jurisdiction by dismissing the previous appeal to the Circuit Court, on the ground that the appeal was within our cognizance.

#### ON THE MERITS.

When the authority exists for the sale made by the tax collector his deed is not vitiated by the reference in the deed to a superseded legislative act, instead of the existing act under which the sale is made.

The case is discriminated from those in which no authority existed for the sale.

*Watkins, J., Dissenting:* A tax sale made in 1888, in the enforcement of taxes assessed in 1887, under and in pursuance of the revenue law of 1882, is null and void because the same had been repealed and superseded by the revenue law of 1886.

In case a tax sale is made under a current revenue law, enacted under the Constitution of 1879, the adjudicatee carries the burden of establishing, with a reasonable degree of certainty, that all legal requirements of assessment and sale have been complied with, on pain of nullity.

The nullity of the primary tax sale is necessarily imparted to a subsequent title which the State conveys to a third person.

A co-owner of an undivided interest in real estate can not be permitted to imperil the interest of his joint proprietor, by means of a collusive combination with other persons to interpose an apparent, though fraudulent obstacle to the enjoyment of his rights, through the instrumentality of an acquiescence in an illegal tax sale.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Frank L. Richardson* and *Lloyd Posey* for Plaintiff, Appellant.

*Gurley & Mellen* and *Buck, Walshe & Buck* for Defendant, Appellee.

#### ON MOTION TO DISMISS.

Argued and submitted May 23, 1896.
Opinion handed down April 12, 1897.

ON MOTION TO DISMISS.

The opinion of the court was delivered by

MILLER, J. The defendant moves to dismiss this appeal, on the ground that the property plaintiff seeks to recover is shown by the record, it is claimed, not to be of the value sufficient to give jurisdiction to this court of this controversy.

The defendant relies in support of his motion on the assessments of the property for taxes for the years 1887 to 1893 at one thousand dollars: and on the fact that shortly before the institution of this suit the property was adjudicated, at public auction for one thousand four hundred and fifty dollars, the plaintiff then being the owner and defendant, the adjudicatee, failing to comply. Assessments can not be accepted as conclusive on the question of value, and those relied on in this case carry less weight, from the fact that the same valuation, one thousand dollars, has been carried on the rolls for the past eight years. A bid at an auction as a test of value depends upon the number of persons in attendance, the competition of bidders, and other circumstances. As against the assessments and the bid of one thousand four hundred and fifty dollars, there is, in the allegation in the petition, that the property is of the value of twenty-five hundred dollars, and the affidavit of two auctioneers, familiar with property values, that the property is of value exceeding two thousand dollars. There was no contestation in the lower court as to the jurisdiction, and in the absence of any testimony specially directed to that issue, we do not feel authorized to dismiss an appeal, always to be maintained, unless the basis to deny the right is clearly established. We have the jurisdictional allegation in the petition not controverted by any pleading. Without passing on the question of plaintiff's right to produce in this court the affidavits as to value, admissible as a general rule when the petition does not show jurisdiction as to amount, in our opinion the allegation in the petition, on this point, is not disproved by the testimony in the record. 1 Hennen's Digest, p. 16, Nos. 1 and 3.

The brief for plaintiff states the appeal first taken to the Court of Appeals was dismissed on defendant's motion, on the ground the petition showed the value of the property beyond the jurisdiction of that court. The plaintiff's case would be hard if now, on defendant's motion, he was denied his appeal here.

Sims vs. Walshe.

It is therefore ordered, adjudged and decreed that the motion to dismiss is denied.

WATKINS, J., concurring. The defendant and appellee moves to dismiss the plaintiff's appeal on the ground that the matter in dispute is below the lower limit of this court's jurisdiction. This is a petitory action for the recovery of real estate which is estimated in the petition to be worth twenty-five hundred dollars; and in this court plaintiff has produced the affidavits of two apparently competent persons who affirm that it is worth twenty-one hundred dollars.

Under the decisions, that is sufficient warrant to justify this court in assuming jurisdiction. In addition it may be properly observed that this case was first appealed to the Circuit Court of Appeals, in which the appeal was dismissed for want of jurisdiction.

## ON THE MERITS.

The opinion of the court was delivered by

WATKINS, J., And handed down on June 15, 1896, affirming the judgment of the District Court.

On February 15, 1897, a rehearing was granted.

On the rehearing, the case was submitted on briefs March 19, 1897.

The opinion of the court was delivered by

MILLER, J. This is a petitory action in which the basis of plaintiff's demand is a tax title, and he appeals from the judgment dismissing his demand.

The property was assessed as that of B. W. Elder; was sold in 1888 for the unpaid taxes of 1880 and bought by the State. Thereafter the State sold the property to Mrs. T. O. Starke, and she sold it to plaintiff in 1891. The defendant and Elder were joint owners, though the legal title was in Elder, in whose name the property was assessed.

The petition avers the tax sale to the State, the sale by the State to Mrs. Starke and the purchase from her by the plaintiff, Sims. The answer charges that by the fraudulent combination between Elder, the defendant's coproprietor, and the plaintiff, the title was made to the plaintiff for Elder's benefit; that defendant's right could not be divested by this fraud of his coproprietor, and the answer further charges that the tax sale to the State, under which plaintiff charges

claims, was void because the authority to make that sale stated in the deed did not exist, hence the answer insists defendant is still the owner of one-half the property.

The tax title by the State recites the sale in 1888 to the State for the unpaid taxes of 1887, under the authority of the Act No. 96 of 1882, and other acts in such cases provided. The defect to this title urged by defendant is that the revenue act of 1882, recited in the deed as the authority by which the tax collector sold to the State, had been amended by the Act No. 107 of 1884 and repealed by Act No. 78 of 1886. These later acts contain a repeal of laws on the same subject matter.

The section conferring on the tax collector authority to sell and buy for the State, contained in the act of 1882, Sec. 52, is repeated in the act of 1886, so that though the act of 1882, referred to in the tax deed had been superseded, precisely the same authority subsisted when the sale in this case occurred. We have been referred in support of defendant's objection to the deed to the settled principle there must be authority in the tax collector for any sale he makes. Blackwell on Tax Sales, p. 405, *et seq.* Thus where no act existed directing the sale, when made under an authority withdrawn by later legislation; where the act directed sales to pay taxes of particular years, but not for the year or years for which the property was sold, or where the sale was authorized of one species of property, but not of that sold, and similar cases, tax sales have been annulled. Eldridge vs. Tibbitts, 5 An. 380; Collector vs. Britton, 23 An. 511; Prescott vs. Payne, 44 An. 650, cited by defendant, and there are cases of similar type. But in this instance there was no moment of time since 1882 when the authority to sell for unpaid taxes did not exist. If the act of 1882 was repealed, the later with the same authority was at once supplied. There was then the requisite authority when this sale was made to the State. We do not think the sale was vitiated merely and only because the deed referred to the repealed act, instead of the act of 1886, especially as the deed also referred to the laws in force on the subject, nor because there was a charge for the deed allowed by the former and not the later and existing act.

The defence there was a fraudulent combination between Sims, the plaintiff, and Elder to defeat defendant's title, has had our attention. In this connection defendant has put in evidence a quit-claim

to him to the property by Elder, executed after the tax sale, and after, with Elder's knowledge, the property had been sold by Starke to plaintiff. The quit-claim implied that no sale to Elder's knowledge had been made to plaintiff, for Walshe could not suspect that Elder, with full knowledge of the sale to plaintiff, would execute the quit-claim, or at least without mentioning a fact so pertinent. The quit-claim, it is urged, shows fraud in Elder, especially as it is shown he assisted in bringing about the sale by Mrs. Starke to plaintiff. It is in evidence that Mrs. Starke, after she bought, offered the property to Elder, who, declining, referred her to Sims, as likely to buy, and he did buy. Whatever room for comment there is, with reference to Elder's course, the question remains, how is Sims to be affected in his purchase of the property from Mrs. Starke, whose title is not assailed? There is no testimony to connect Sims with Elder, except their relationship as brothers-in-law and occupancy of the same office. There is the testimony of Sims of his ignorance of the relations of Elder and Walshe, and that he bought from Mrs. Starke and paid the price in good faith, acquiring only for himself. It was not until he sold the property, it appears, he had any knowledge of Walshe's previous connection with the property, then acquired by the registry of the quit-claim by Elder to Walshe. It is urged on us as a circumstance of suspicion that before buying Sims required a quit-claim from Elder. Any purchaser from one holding a tax title it seems to us, might naturally seek, if he could get it, a quit-claim from the assessed owner on his coproprietor. Unless we can assume fraud in Sims from his relationship to Elder, Sims stands before us as a purchaser in good faith of property sold more than a year previous at a tax sale. Then too, that sale to the State, followed by the State's sale to Mrs. Starke, completely divested the ownership of Elder as well as of Walshe. No fraud of Elder or complicity, real or supposed, of the plaintiff Sims, could have affected Walshe, who had by the tax sale lost the property and all right of redemption before Sims acquired or was brought in any contact with the subject.

It is therefore ordered, adjudged and decreed that our former judgment be set aside, and it is now ordered, adjudged and decreed that the plaintiff Sims be, and he is hereby decreed to be the owner of the property sued for described in his petition, and that defendant pay costs.

50

### DISSENTING OPINION.

WATKINS, J. Plaintiff claims the ownership of a square of ground situated in the Sixth District of the city of New Orleans, bounded by Oliver, Wall, Walnut and Fourcher streets, averring that same was derived through the following chain of titles, viz.:

*First.* From Dora Lambeth, wife of Theodore O. Starke, by authentic act of date 12th of September, 1890, for the price of three hundred dollars—the act containing the statement, that it was "the same property which was acquired by the present vendor by purchase at a sale made thereof by the State Tax Collector of the city of New Orleans, on the 12th day of December, 1889, for the unpaid State taxes due thereon for the year 1887, as will more fully appear from an act of sale of the 2d of May, 1890, from the State of Louisiana (through) Benjamin W. Elder to Mrs. Dora L. Starke," etc.

*Second.* From the State of Louisiana to Dora Starke, by authentic act of date 2d of May, 1890, the act reciting that the sale was made in pursuance of Act No. 80 of 1888, for the consideration of twenty-five dollars.

*Third.* From Benjamin Elder to the State of Louisiana by authentic act of sale of date 13th of July, 1888, the act reciting that the sale was made at public auction by the State Tax Collector, in pursuance and by virtue of the power in him vested by the provisions of Act 96 of 1882, and of the laws in such cases provided, to enforce the payment of State taxes on the aforesaid property for the year 1877, and that same was adjudicated to the State for the price of thirteen dollars and fifty cents, same being the amount of the taxes for said year.

Under this statement, the ownership of the plaintiff is asserted under, and exclusively based upon the tax sale of July 13, 1888, and the tax collector's adjudication of said property to the State of Louisiana, in satisfaction of the unpaid taxes of Benjamin Elder, for the year 1887; and, consequently, the plaintiff's title must depend, for its validity, upon that adjudication, as his title states specifically and in detail its origin and source.

In addition to the chain of title, as thus set out, the petition avers, that the defendant claims to be the owner of said property, and has taken illegal possession thereof; and that he has caused to be recorded in the conveyance office a pretended transfer by one B. W.

Sims vs. Walshe.

Elder, under private signature, bearing date 23d of February, 1891, and registered on the eleventh of the same month.

It avers that said pretended transfer is null and void, and of no validity, for the reason that said Elder was not the owner of said property at the time of said transfer, and has no right in said property which he could convey to said Walshe.

Petitioner places the rental value of said property at ten dollars per month, and avers that he is entitled to claim rent at that price from the 13th of September, 1890—the date he acquired title from Dora Starke.

His prayer is for judgment decreeing him to be the legal owner of said property and entitled to possession thereof; and for ten dollars per month rent from the aforesaid date.

The substance of defendant's answer is, that plaintiff is not the owner of the property, coupled with an averment that the title set up by him is illegal, null and void.

He avers that said property was originally acquired by him, jointly with one Benjamin W. Elder, on December 12, 1884, by purchase from M. J. Farrell, but that the title was, for mutual convenience, taken in the name of B. W. Elder alone—constituting each the owner of an undivided one-half interest therein.

That, by act of February 23, 1891—the one above referred to— said B. W. Elder conveyed and delivered to him, for a valuable consideration, all of his right, title and interest in said property.

That the plaintiff entered into an illegal combination and collusive conspiracy with said B. W. Elder and others for the purpose and with the object of defrauding him of his interest in said property.

That, in pursuance of said collusion and conspiracy, said Elder allowed said property to be sold for taxes, and that, subsequently, to-wit, on the 27th of August, 1890, he gave to the plaintiff, without consideration, and without his (defendant's) knowledge or consent, a paper purporting to be a quit-claim title to the said property; and that the intent and purpose of said pretended quit-claim title was to defeat his (defeudant's) right therein, by an attempted confirmation of the aforesaid tax adjudication to the State, and from whom plaintiff acquired, through Mrs. Starke, on the terms and conditions already stated.

The defendant further avers that, at the time of all of these illegal and wrongful acts, both the plaintiff and Elder were aware of his

interest in the property, but neither of them informed him of said proceedings.

Further answering, the defendant sets up his title and prays judgment in reconvention, decreeing him to be the sole owner, and annulling and setting aside the alleged titles of the plaintiff and his authors in title.

On the trial there was judgment in favor of the defendant in line with the averments and prayer of his answer and reconventional demand, decreeing him to be the lawful owner of the property and entitled to retain possession, and decreeing the illegality and absolute nullity of the plaintiff's title, as well as those of his vendor and her author—the State; and that his demands be rejected and disallowed, *in toto*.

From that judgment the plaintiff appeals.

In view of the foregoing recapitulation of facts it is quite manifest that the decision of this case must turn upon the effect that is to be given to the original tax adjudication to the State of Louisiana on the 13th of July, 1888, as it was the first apparent divestiture of the Elder title; for if it possessed any inherent defect, or patent illegality, those claiming thereunder can not occupy any better position than their author.

And, in determining that question, we must consider the fact that, as the adjudication was made in pursuance of a current revenue law of the State which was enacted under the Constitution of 1879, the adjudicatee thereunder is bound to establish, with a reasonable degree of certainty, that all the formalities of law in assessment and sale were complied with on the pain of nullity of the title.

And, as an adjunct of said proposition, we are to consider the contemporaneous history of the transaction and the manner in which the parties in interest dealt with this tax alienation.

A conspicuous feature of the tax sale to which our attention has been attracted is that the sale was made under the revenue law of *1882*, whereas the taxes were assessed *in 1887* under the revenue law of *1886*, *which had superseded* the act of 1882; and a conspicuous feature of plaintiff's title is that, notwithstanding Elder had renounced and abandoned his right, title and interest in the property in favor of the plaintiff on the 27th of August, 1890, it was not set up by the plaintiff as a muniment of his title nor referred to in his petition; and it was for the first time discovered and adverted to by defendant in his answer.

And when its date is taken into consideration it becomes evident that same was intended to quiet and confirm the tax title; for it appears that Dora Starke acquired from the State on the 2d of May, 1890, preceding said quit-claim. And it is further of importance to notice that Mrs. Starke conveyed the property to the plaintiff *a few days after* its execution; and yet it was not recorded until the 11th of February, 1893—*more than two years thereafter*.

And it is further important to observe that, notwithstanding Elder had executed in favor of *defendant* an absolute assignment of all his rights, title and interest in the property on the 23d of February, 1891, he failed to make any mention to him of the quit-claim he had *previously executed in favor of the plaintiff on the 27th of August, 1890*.

And, finally, it must be observed that this quit-claim in favor of the plaintiff was made while the title stood in the name of Mrs. Starke, but that same was almost immediately conveyed to him by Mrs. Starke.

Not being satisfactorily explained, these *indicia* of consent and collusion would indicate an intention on the part of Elder to defeat the interest of the defendant in the property, by attempting to revive and confirm an illegal tax sale, and place it securely in the name of the plaintiff as a party interposed for his (Elder's) benefit; while, at the same time, apparently acknowledging the defendant's ownership, by transferring his interest to him, notwithstanding he had previously executed a quit-claim to the plaintiff without defendant's knowledge.

What other object could these transactions have been designed, or expected to have accomplished? It was evidently an intentional fraud on the rights of the defendant; and surely the plaintiff can not be deemed to have acquired by said quit-claim any muniment of title, considering that it merely declares that Elder thereby only abandons, releases and quit-claims to and in favor of Philip S. Sims all of his right, title and interest in said property, *without any consideration whatever*.

Put these transactions in a light most favorable to the plaintiff and Elder, they suggest the latter's attempt to defeat the plaintiff's interest in the property through the instrumentality of a tax sale of more than questionable validity, to which he had yielded a tacit consent when made, and was afterward attempting to fraudulently confirm through a person he had interposed.

And, in this connection, it should be observed that, at the time when Elder made the gratuitous relinquishment of his interest in the property to Sims, the plaintiff, the latter had acquired no claim thereto from Mrs. Starke, or any one; nor in so far as the record discloses, had he at the time, any intention or expectation of acquiring any.

The proof shows that, after Mrs. Starke had taken title from the State, to whom Elder's title had been adjudicated at tax sale, her husband, T. O. Starke, approached Elder, and requested him to purchase the property back from his wife; but that Elder declined to do so, and "brought Starke to Phillip Sims, the plaintiff, as a person who would like to buy." It further shows, that Elder told Simms, as an alleged inducement, that "it is a pretty good thing for anybody who had the money and can afford to hold on the real estate."

It was soon after this conversation that Elder executed the relinquishment of the title in Sims' favor.

The proof shows that Elder and Sims are brothers-in-law, and on terms of business intimacy; and that Colonel Starke testified as a witness, that he would not have sold the property at so low a figure, had he not been informed that Sims and Elder were brothers-in-law; and had he not " considered it a family matter."

It is conspicuous that all of these dealings and transactions occurred anterior to the sale and transfer from Elder to the defendant Walshe; and anterior to the signing of the agreement between Elder and Walshe, whereby Walshe was authorized to institute and prosecute certain suits against third parties for the purpose of perfecting title to the property.

My conclusion is that, under the circumstances detailed, Sims acquired no title to the property in controversy which he can successfully oppose to that of the defendant; because the proof makes t clear that he was but a person interposed to take title for Elder, the object of which was to defeat the interest of the defendant by means of a tax adjudication to the State.

Such traffic in tax sales, either with the present knowledge or subsequent acquiescence of the tax delinquent, has been viewed by courts of justice and given effect merely as a receipt for the taxes due and unpaid, and the tax title as enuring to the benefit of the owner of the property.

Sims vs. Walshe.

In our reports I find no case in which an attempt was made to divest an adverse title by the instrumentality of tax proceedings and sale, but there are two appertaining to the attempted divestiture of an act of special mortgage in this way.

In the former (*Austin vs. Bank*, 30 An. 691) the court said, in speaking of a tax sale, that "no government will permit its machinery, constructed to enforce the payment of public dues to the *fisc*, to be used to manipulate a fraud; and if the purchaser is a party to the fraud he must share in its punishment * * *

"The purchase by Moss was nothing more or less than a purchase by Mrs. Austin, the debtor and mortgagor, through her son, the plaintiff. The money paid, as the price at the tax sale, was only what she, as owner of the property, owed the State, and what she honestly and in good conscience ought to have paid without and before, and to prevent a sale. If she could not pay it, the debt being *exigiant* and of so high a rank, she should have acquainted her creditor and mortgagee with its imminence, instead of observing the suspicious reticence which characterized her conduct. The creditor's rights, as mortgagee and vendor, can not be imperiled by the mortgagor's collusive combination with others to interpose an apparent but fraudulent obstacle in his way in enforcing those rights."

In Beltram vs. Villere, 4 Southern Reporter, 506, we affirmed a like principle and said:

"Under this evidence all the defences of the various defendants fall. Argument is quite unnecessary to demonstrate that these were purely and simply consent proceedings that had for thetr object the divestiture of plaintiff's special mortgage on the property and the investiture of Larendon with security for his unsecured demands," quoting with approval the extract we have cited from Austin vs. Bank, *supra*.

And those authorities are pertinent to the issue now before us in that the testimony sustains the statement that the defendant's title to an undivided interest in the property in controversy will be imperiled by his co-owner's collusive combination with others to interpose an apparent but fraudulent obstacle to the enjoyment of his rights.

But in addition to this argument comes the very forcible suggestion that Act 96 of 1882, under which the tax adjudication to the State was made on the 13th of July, 1888, in the enforcement of taxes of

1887, had been repealed and completely superseded by Act 98 of 1886, under the provisions of which the taxes were assessed, and for that reason the sale was an absolute nullity on the face of the papers.

And I can not see how that argument can be resisted.

The nullity of the primary tax sale to the State necessarily draws to it the nullity of the title from the State to Mrs. Dora Starke—thus completely invalidating plaintiff's principal title.

In Wilbert vs. Michel, 42 An. 853, this court held, that the validity of a title acquired from " the State depends upon the validity of the adjudication, or forfeiture to the State; and if that is for any cause invalid, the State acquires no title and can transfer none." Guidry vs. Broussard, 32 An. 926; Gatlin vs. Hutchinson, 36 An. 350; At-wood vs. Weems, 99 U. S. 183; Lee vs. Kaufman, 106 U. S. 196; Saunders on Taxation, p. 313.

And in Breaux vs. Negrotto, 43 An. 426, we said:

" But if the State acquired no title to plaintiff's property because of radical defects in the tax proceeding, she could convey no title to the defendant under the sale," etc. Citing: Guidry vs. Broussard, *supra*; Gibson vs. Hitchcock, 37 An. 209; Baton Rouge Oil Works vs. Dundas, 34 An. 255; Denégre vs. Girac, 35 An. 952; Carig vs. Bush and Levert, 35 An. 1100.

My examination of the law and evidence has satisfied me that the opinion and judgment of our learned brother of the court below, in favor of the defendant, is correct.