## ATWOOD *v.* WEEMS.

1. The right, under sect. 821 of the Revised Statutes, to require the panel of the jurors called to serve for a term to take the oath therein prescribed, or to be discharged from the panel, is limited to the district attorney, and is not a right of individual suitors in a case about to be tried.
2. A testator in whom was the legal title to lands, which he had sold by a written contract, can transfer by his will both such title and the notes given for the purchase of them, and the devisee will stand towards the purchaser in the same position that the testator did.
3. The court reaffirms the ruling in *Bennett* v. *Hunter* (9 Wall. 326) and *Tacey* v. *Irwin* (18 id. 549), that a sale for direct taxes under the act of 1862 is void, where, before the sale, the owner, or some one for him, was ready and offered to pay them, and was told that payment would not be accepted.
4. Such offer to pay, made to a clerk of the board of commissioners at their office, who was authorized by them to receive delinquent taxes generally, is sufficient.

ERROR to the Circuit Court of the United States for the Northern District of Florida.

The facts are stated in the opinion of the court.

[1] The act was passed in 1862, repealed in 1871, and re-enacted in 1874 by sect. 820, Rev. Stat.

*Mr. H. Bisbee, Jr.*, for the plaintiff in error.
*Mr. James M. Baker, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

This is an action of ejectment for a lot in St. Augustine, brought in the proper court of the State of Florida, and transferred into the Circuit Court of the United States for that district, where the plaintiff below recovered a judgment against the plaintiff in error, which we are called on to review. The questions to be decided are all raised by a bill of exceptions.

1. It appears " that the defendants moved the court that the jurors of the panel be required to answer upon oath whether or not they had given aid and comfort to, or aided and abetted, the late rebellion against the government of the United States, within the true sense and meaning of sect. 820 of the Revised Statutes, for the purpose of exercising the right of challenging them, if they came within its provisions." The court denied the motion, on the ground that said section was unconstitutional.

We decided in *Burt* v. *Panjaud* (*supra*, p. 180), from the same circuit, that a man cannot be compelled to answer this question when put to him separately in reference to the right of challenge for the disqualification prescribed by that section, and that to enable a party to avail himself of the right there given, he must prove by other evidence, if the proposed juror declines to give it, that he has been guilty of the offences which so disqualify him.

But sect. 821 authorizes such an oath to be tendered to the whole panel, at the instance of the district attorney or his representative. This, however, must be at the beginning of the term, and relates to service on the panel for the term. The right to tender the oath is discretionary with the attorney for the government, and belongs to no one else.

It is not a right, therefore, in a party to a civil suit to tender such oath in that suit. Sect. 821 does not require the panel, or any one on it, to take the oath or to take a general oath to answer questions touching his qualifications, but provides expressly for his declining to take the prescribed oath. This act of declining of itself disqualifies him as a member of the panel for that term. This right to decline to swear confirms what

we have said in *Burt* v. *Panjaud;* namely, that it was not intended to compel the proposed juror to disclose on oath his own guilt.   Since, therefore, the defendant had no right to challenge the entire panel, as the district attorney might have done at the beginning of the term, nor to require each member of it to testify as to his guilt or innocence of treason, and since he offered no evidence that any one of them was so disqualified, the court was right in overruling his motion.

The judge's declaration of opinion that the law was unconstitutional did not make his action erroneous when it was right on other grounds.

2. The next question arises out of the construction of the will of Francis M. Weems, under which plaintiffs claimed title.

The will is in the record, and is dated Sept. 25, 1865, and conveys a lot in St. Augustine, three notes due from J. H. Meyers for $500, each given for the purchase of a lot in St. Augustine, and all his other property, to his wife and three sons, who are the plaintiffs.   A written agreement, made in 1860 by Francis M. Weems, for the sale of this lot to J. H. Meyers, is offered in evidence, with proof that Meyers had taken possession under it.   The court was asked to instruct the jury that the will did not convey the title to the lot, but only the notes of Meyers; and that, if it was designed to convey the title, it was void, by reason of the adverse possession of defendant.   The court refused to do this, and said that the failure to pay the notes gave to the testator, Weems, a right of entry which passed by the will.

It is clear that the contract with Meyers left the legal title in Weems.   This legal title passed by the will as well as the notes; and though it may have been the desire of the testator to recognize the contract for the sale, it was necessary, to enable the devisees and the executor to enforce the collection of the notes, that the title should be in them also.   They could then either tender a deed and demand payment, or assert their right of entry for failure of the purchaser to pay.

It is not necessary to decide here whether by the common law a testator having the legal title and right of entry of land in the adverse possession of another could make a valid devise

of the title, or whether, if that be the common law, it was the law of Florida; for it appears both by the will itself and by other evidence in the record that the plaintiffs are heirs as well as devisees of Francis M. Weems, and if the will did not convey the title, it was theirs by inheritance.

3. Defendants produced in evidence a certificate of sale of this lot for taxes made by commissioners appointed under the act of June 5, 1862, for the collection of direct taxes in insurrectionary districts within the United States, to Adolph Mayer, and an assignment from Mayer to Anna M. Atwood, one of the defendants, and possession under that certificate. In avoidance of this certificate, plaintiffs introduced evidence tending to prove that the sale was not advertised as long as the law required, and also that before the sale their testator offered to pay the taxes and costs, which the commissioners refused to receive.

The evidence on this last point, which is without contradiction, is that the commissioners had determined that no taxes could be lawfully paid, after the advertisement of the sale, by any one else but the owner of the property; and that under this view of the matter the clerk of the board of commissioners, who had charge of the office at St. Augustine, twice peremptorily refused to receive the tax due from Weems on this lot.

One offer to pay was made by Amos Corbitt, who was in possession of the lot under J. H. Meyers, the purchaser from Weems, and the other by Christoval Bravo, an agent authorized by Weems to do so. To Corbitt the clerk said he would take the money from no one but the owner, and he might as well talk of paying tax for Jeff. Davis.

In *Bennett* v. *Hunter* (9 Wall. 326) and *Tacey* v. *Irwin* (18 id. 549) we decided this very question. In the former case, the tax was offered by a tenant of the owner and refused, and we held the sale void; and further, that said payment could be made by any friend or agent of the owner, whose act he recognized. The case of *Tacey* v. *Irwin* went further, and held that neither payment nor actual tender was indispensable, but that a refusal to receive the taxes rendered a manual tender unnecessary. If the party offered to pay, was ready to

pay, and was told it would not be accepted; it defeated the sale as much as payment.

Some attempt is made to show that Dunham, the clerk, to whom Corbitt and Bravo applied, was not authorized to receive taxes, and that they could only have been lawfully paid or tendered to the commissioners in person at Fernandina.

But it appears by the testimony of the commissioners themselves that they had an office at St. Augustine as well as at Fernandina. That Dunham, their clerk at the former place, was authorized to receive, and did receive, the taxes which were payable there, and that all the money received for taxes at that place was paid to him. Of their right to authorize him to act for them in the receipt of taxes we have no doubt, and that his refusal to receive these taxes, which was under instructions from them, was the same as if they had done it in person.

The sale, therefore, was void. Payment of the taxes is one of the matters which, by the express terms of sect. 7 of the amendatory act of 1862, may be shown to avoid the certificate; and in the cases cited we have held that an offer to pay, and refusal to receive, had the same effect. The error of the judge concerning the length of the advertisement of the sale, which is not one of the matters that will avoid the certificate under that section, was immaterial, as it was clearly void, for the reason we have just stated.

We see no error in the judgment, and it is, therefore,

*Affirmed.*

Mr. Justice FIELD concurring.

I agree with my associates that the jurors summoned in this case could not be required to make oath whether they had participated in, or given aid and comfort to, the late rebellion against the government of the United States. And I also agree with the court below as to the unconstitutionality of the act which excludes from the jury persons who decline to take such oath.

Undoubtedly Congress may prescribe the qualifications of jurors in the Federal courts, and declare the causes of disqualification and challenge. But if any of these causes be the commission of an act which the law has made a public offence,

it is not competent for the court to go into an investigation to determine the guilt or innocence of the juror. That is to be ascertained only in one way, — by a separate trial of the party upon an indictment for the offence; and the only competent evidence in such case is the record of his conviction or acquittal. It would be a strange and unprecedented thing for a court, upon the challenge of a juror, to go into a side trial, whether he had committed a felony, such as highway robbery, arson, or murder. No one would contend that such a procedure is admissible; and if not in those cases, it is not admissible in any case where the commission of a public offence is the ground of challenge.

The court may take judicial notice, from the existence of war, that a whole people are public enemies; but it cannot take judicial notice that a whole people, or individuals of it, have violated the municipal laws of the country. If such violation be relied upon to exclude a person from becoming a witness or a juror, it must be shown, not by evidence of what others may have seen or heard, but by the record of the party's conviction.