**In the Matter of PITTSBURGH PEN-GUINS PARTNERS, Debtor.**

**Appeal of EQUIBANK, N.A., in behalf of Frank Sklar, Receiver.**

**No. 78–1971.**

United States Court of Appeals, Third Circuit.

Argued March 20, 1979.

Decided April 4, 1979.

Sanford M. Lampl, Lampl & Sable, Pittsburgh, Pa., for Equibank, N.A. et al.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Karl Schmeidler, Joan I. Oppenheimer, Attys., Dept. of Justice, Tax Div., Washington, D.C., for appellees, Robert Cindrich, U. S. Atty., Pittsburgh, Pa., of counsel.

Before GIBBONS, HIGGINBOTHAM, Circuit Judges, and MARKEY,* Chief Judge.

\* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

I. Sections 6331(a)–(c) provide as follows:
  § 6331. Levy and distraint
    (a) Authority of Secretary or delegate.—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 340(d)) of such officer, employee, or elected official. If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This case presents the issue whether property seized by a tax levy pursuant to 26 U.S.C. 6331 [1] prior to the date of bankruptcy is within the summary jurisdiction of a Chapter XI bankruptcy court. The district court concluded that seized property was not within that jurisdiction. We affirm.

On June 12, 1975, the Internal Revenue Service (IRS) served a notice of levy on holders of tangible personal property and bank accounts belonging to the Pittsburgh Penguins Partners (PPP). Among those items seized were approximately $90,000 worth of property located at the offices of PPP, and two bank accounts listed in PPP's name at Pittsburgh National Bank (PNB). The total sum claimed as of June 12, 1975 was $587,260.78.

On June 13, 1975, PPP filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, and a receiver was appointed. On June 16, PNB received a letter from counsel for the Receiver demanding that the two PPP bank accounts be turned

and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.
    (b) Seizure and sale of property.—The term "levy" as used in this title includes the power of distraint and seizure by any means. A levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).
    (c) Successive seizures.—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary or his delegate may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses is fully paid.

over to the court. That same day, Equibank, N.A., the Debtor's largest unsecured creditor, caused a writ of execution in the amount of $1,096,562.50 to be served on PNB, also purporting to seize the two contested bank accounts.

On June 25, 1975, PNB filed a complaint in interpleader in the Chapter XI proceedings, naming as defendants the United States and the Receiver. The complaint was subsequently amended to include Equibank as a defendant. Subsequent to the filing of the interpleader action, the United States and the Receiver resolved their dispute over the contested bank accounts. By stipulation the Receiver agreed to pay to the United States $547,271.41, in full payment of the principal, pre-petition interest, and costs of PPP's tax liability. In addition, the parties agreed to place in escrow the sum of $39,989.37, representing penalties and post-petition interest to July 15, 1975. These funds, to be drawn from the sale of the debtor's tangible assets, were to be held "pending a final determination as to jurisdiction of the court and whether such amounts are payable, in whole or in part, to the Internal Revenue Service as a result of its levy and seizure on June 12, 1975." [2] In return the government agreed to release its claim of a lien on the assets of the debtor so as to permit their sale. By a separate stipulation, the Receiver also negotiated the release of Equibank's garnishment upon the PNB accounts. PNB's amended complaint in interpleader was then dismissed and the two PNB accounts were turned over to the Receiver. Following a successful sale of the tangible assets of the debtor, a final Plan of Arrangement was adopted, and approved by the creditors. This Plan was confirmed on January 5, 1976.

The government and the Receiver (represented below and in this proceeding by counsel for Equibank) then turned to the litigation in the Bankruptcy Court of the government's entitlement to penalties and interest. That issue turned on the effect of the levy upon the summary jurisdiction of the Chapter XI court. If the property seized was within that jurisdiction, then at the date of bankruptcy it became part of the debtor's estate, and §§ 57j and 63a(1) of the Bankruptcy Act operated to bar the payment of penalties and post-petition interest to the government. If, on the other hand, the levy had removed the property from the court's summary jurisdiction, then by the terms of the stipulation, the government was entitled to possession of the $39,-000 in the escrow account, and the Receiver's remedy was a plenary proceeding against the IRS to contest title to the funds. On October 28, 1977, the Bankruptcy Court ruled in favor of the government, holding that the levy was effective to divest the Chapter XI court of summary jurisdiction. The district court affirmed in an unpublished opinion, and this appeal followed.

Section 311 of the Bankruptcy Act, 11 U.S.C. § 711, gives a Chapter XI bankruptcy court "exclusive jurisdiction of the debtor and his property, wherever located." Courts and commentators are divided on the proper interpretation of the statutory language. One school holds that the scope of Chapter XI jurisdiction is the same as in straight bankruptcy, where the exercise of summary jurisdiction depends on a finding that the debtor had actual or constructive possession of the property at the time of the filing of the petition in bankruptcy. *Bayview Estates, Inc. v. Bayview Estates Mobile Home Owners Ass'n*, 508 F.2d 405, 407

**2.** In its reply brief, Equibank argues for the first time that the two PNB bank accounts were also subject to the conflicting and prior claims of wage claimants and prospective playoff ticket purchasers. We find it unnecessary to address that contention. The parties had previously stipulated that the government's levy extended to the $90,000 of tangible personal property seized at the PPP offices. The

government now claims by virtue of the levy only the $39,989.37 in escrow. Since that sum is less than the stipulated value of the tangible assets concededly subject to the lien, we have no occasion to consider the government's further right in the bank accounts upon which it also served notice of levy and express no view upon it.

(6th Cir. 1974); *In re Barasch,* 439 F.2d 1393, 1394 (9th Cir. 1971); 9 Remington, *Bankruptcy* § 3574 at 217 (6th ed. 1955). If the bankruptcy court determines that the property is held by a third party with an adverse claim thereto, then it is divested of summary jurisdiction. *Bayview Estates, Inc. v. Bayview Estates Mobile Home Owners Ass'n, supra*; *cf. Cline v. Kaplan,* 323 U.S. 97, 98–99, 65 S.Ct. 155, 89 L.Ed. 97 (1944).

A second line of authority reads § 311 as conferring jurisdiction based upon ownership rather than possession. On this view, the court acquires jurisdiction over all of the debtor's property in its possession as it would in straight bankruptcy. In addition, it may assume jurisdiction over property in the possession of a third party who makes no claim to ownership of the property, or whose claim of ownership is merely colorable. Where, however, the property is in the possession of a third party with a substantial adverse claim of ownership, the court is without summary jurisdiction. *Slenderella Systems of Berkeley v. Pacific Tel. & Tel. Co.,* 286 F.2d 488, 490 (2d Cir. 1961); *In re Gunder,* 88 F.2d 284 (7th Cir.), *cert. denied sub nom. 164 East 72nd Street Corp. v. Gunder,* 301 U.S. 701, 57 S.Ct. 931, 81 L.Ed. 1356 (1937); 8 *Collier on Bankruptcy* § 3.02 at 162–63.

This Circuit has never had occasion to choose between the competing views of § 311, *see In re Rubin,* 378 F.2d 104 (3d Cir. 1967), although in *In re Copeland,* 391 F.Supp. 134, 140 (D.Del.1975), *aff'd in part, vacated in part,* 531 F.2d 1195 (3d Cir. 1976), Judge Schwartz adopted Collier's broader view.

We need not resolve that issue here, however, for under either theory we think that the levy was effective to remove the property from the court's jurisdiction. *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728,

44 L.Ed.2d 201 (1975), makes that clear. In *Phelps,* a straight bankruptcy, the government served a notice of levy upon cash assets of the debtor held by an assignee for the benefit of creditors. Thereafter an involuntary petition was filed against the debtor. The Supreme Court held that the service of the notice of levy was a transfer of possession sufficient to oust the summary jurisdiction of the bankruptcy court. That notice, the Court stated, was "equivalent to seizure" and gave the United States "full legal right to the [sums] levied upon as against the claim of the . . . receiver." 421 U.S. at 337, 95 S.Ct. at 1732. In a further dictum, the Court suggested that the prebankruptcy levy effectively "displaced any title of [the debtor]." *Id.* at n. 8, 95 S.Ct. 1728 n. 8.

Appellants concede that *Phelps* is direct authority for the proposition that service of a notice of tax levy is a seizure of the property levied upon that transfers constructive possession to the government. Under Remington's narrow interpretation of § 311, that fact alone would deprive the court of jurisdiction. Moreover, *Phelps'* further indication that service of a levy effectively transfers "full legal right" to the property levied upon is, we think, sufficient to give the government a "substantial adverse claim" of ownership as well. Even accepting Collier's broader view of § 311, that adverse claim deprives the Chapter XI court of summary jurisdiction. *Resthaven Psychiatric Hospital v. United States,* 426 F.Supp. 516 (C.D.Cal.1977); *In re Walsh,* 38 A.F.T.R.2d 6206 (D.Alaska 1976), *appeal pending,* No. 77–3631 (9th Cir.). *Contra, In re VanDeVeer,* 2 Bankr.Ct.Dec. 1590 (W.D. Va.1976).[3] We need not decide, therefore, the further question whether the levy was effective to transfer full title to the assets to the United States.

Because the Bankruptcy Court was without summary jurisdiction over the assets

---

**3.** Appellants suggest that the *Phelps* holding was intended to apply only to the cash assets seized in that case. We find no suggestion in the *Phelps* opinion that such a distinction was intended.

levied upon, we hold that the district court properly ordered that the funds placed in escrow for payment of penalties and post petition interest be released to the government. If the Receiver has any further objections to the government's claim they must be pressed in a plenary action.