In re BUSH GARDENS, INC., Debtor,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 79–0001.

United States Bankruptcy Court, D. New Jersey.

Nov. 21, 1979.

Markowitz & Zindler, Lawrenceville, N. J., for plaintiff by Michael A. Zindler, Lawrenceville, N. J.

Dept. of Justice, Tax Division, for defendant by Robert L. Handros, Washington, D. C.

## OPINION

RICHARD W. HILL, Bankruptcy Judge.

A petition under Chapter 11 of the new Bankruptcy Code was filed by debtor, Bush Gardens, Inc., on October 16, 1979. The debtor remained in possession and for a short time continued operation of its business.[1] Prior to the filing, debtor was engaged in the operation of a restaurant and liquor business located on Route 130, Yardville, New Jersey. One of the assets held by debtor was a retail consumption license issued by the Township of Hamilton. Debtor's liquor license was levied upon and seized[2] by the Internal Revenue Service on August 7, 1979 pursuant to 26 U.S.C. § 6331[3] for collection of federal withholding and Social Security taxes for the first two quarters of 1979, totalling $18,905.75. On October 12, 1979 debtor filed a return showing additional tax liabilities for the third quarter of 1979, bringing the total to $23,978.64, plus interest.[4] Up to the present debtor has been deprived of the possession and use of said liquor license. The United States has not advertised the license for sale or taken any steps to liquidate or otherwise dispose of the license.[5]

Debtor asks this court pursuant to Section 542 of the Bankruptcy Code, 11 U.S.C. § 542[6] to compel turnover of the liquor license by the IRS to debtor. Without the possession and use of the license, debtor claims that it will suffer irreparable injury and harm in that 1) gross receipts generated by debtor will remain extremely small;[7]

---

1. See 11 U.S.C. §§ 1107 and 1108. The debtor terminated its business shortly after the filing.

2. The IRS had filed a federal tax lien on August 3, 1979, notifying the debtor that the license would be seized unless payment was made by August 6, 1979.

3. Section 6331, in pertinent part, provides:
   (a) Authority of Secretary or delegate—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. . . .
   (b) Seizure and sale of property—The term "levy" as used in this title includes the power of distraint and seizure by any means. A levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

4. For the entire year 1979 debtor has paid only $200.00 withholding and social security taxes.

5. Orazio Palmisano, revenue officer for the IRS, testified that he had made the decision not to sell the license. Mr. Palmisano had anticipated, after discussions with debtor, that Bush Gardens would come to some sort of agreement for payment and return of license.

6. 11 U.S.C. Section 542:
   (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

7. Joseph Falsette, president of debtor corporation, testified that prior to seizure of the liquor license, the sale of alcoholic beverages generated more than 50% of its gross receipts. Further testimony indicated that business volume had dropped substantially after the seizure.

2) as a result, debtor's proposal of a plan of arrangement under Chapter 11 will be frustrated as debtor sinks deeper into debt. Debtor further claims that the liquor license is a free asset with substantial value and that debtor is entitled to its use and possession during the Chapter 11 proceeding. It is the position of the IRS that pursuant to Section 6331 of the Internal Revenue Code of 1954, 26 U.S.C. § 6331, debtor was divested of title and ownership of property seized by the IRS prior to bankruptcy, here the liquor license, and that the IRS is not required by Section 542 to return the license to debtor.

■ The Internal Revenue Service is not immune from the provisions of Section 542. Section 542 provides for turnover of property by an "entity". An entity under the Code includes any "person, estate, trust, governmental unit". 11 U.S.C. § 101(14). "Governmental unit" includes the United States. 11 U.S.C. § 101(21). Accordingly, the Internal Revenue Service as a governmental unit comes within the purview of Section 542.[8]

Section 542 requires the turnover of property that "the trustee may use, sell, or lease under section 363 of this title." 11 U.S.C. § 542(a). Pursuant to Section 1107(a) of the Code, a debtor-in-possession has all of the rights and powers of a trustee, except compensation. 11 U.S.C. § 1107(a). Sections 363(b) and (d) of the Code permit a trustee to use or sell "property of the estate." 11 U.S.C. §§ 363(b), (d).

■ The question to be decided by this court is whether the liquor license, after seizure, is "property of the estate" within the meaning of Section 541 of the Code, 11 U.S.C. § 541. That a liquor license in New Jersey constitutes property for federal tax purposes is undisputed. *See The Boss Co., Inc. v. Board of Commissioners of Atlantic City*, 40 N.J. 379, 192 A.2d 584 (1963). Under the Bankruptcy Code, as under the Act, property interests are defined by state law. However, whether such property is "property of the estate" is a federal question to be resolved under the Bankruptcy Code.[9] "Property of the estate" is defined in Section 541.

■ Under Section 541 of the Code, an estate is created upon commencement of a case, 11 U.S.C. § 541(a). The estate created is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The legislative history indicates that the scope of Section 541 was intended to be extremely broad. It includes all kinds of property, tangible or intangible, and causes of action specified in Section 70(a) of the Bankruptcy Act. It also includes property recovered by the trustee under Section 542, property merely out of the possession of the debtor, but which remained "property of the debtor". H.Rep. No.95–595, 95th Cong., 1st Sess. 367 (1977); S.Rep.No.95–989, 95th Cong., 2nd Sess. 82 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad. News 5963, 6323; 5787, 5868, *See also* 4 *Collier on Bankruptcy* ¶ 541.06 (15th ed. 1979). "[T]he underlying theory of Section 541(a)(1) is to bring into the estate *all* interests of the debtor in property as of the date the case is commenced. Thus, as a general rule the estate created under Section 541 will include all legal and equitable interests of the debtor in property." 4 *Collier on Bankruptcy* ¶ 541.06 (15th ed. 1979). The estate consists of the debtor's interests in property which is not the same as the property in which the debtor has some interest.[10]

---

8. Sovereign immunity was not raised as a defense by the United States. See 11 U.S.C. § 106(c).

9. 4 *Collier on Bankruptcy* ¶ 541.02 (15th ed. 1979); *See* H.R.Rep.No.95–595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess. 82–84 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad. News 5963, 6323–25; 5787, 5868–70.

10. "[W]here the debtor holds bare legal title without any equitable interest ... the estate acquires bare legal title without any equitable interest in the property... Similarly, if the debtor holds an equitable interest in the property without legal title, the estate would acquire only the equitable interest of the debtor in property and not the legal title. Thus, as sec-

It is clear that the concept of what is property of the estate under Section 541 radically differs from that under Section 70(a) of the Act. The requirement of Section 70(a)(5) that the debtor be able to transfer the property or his creditors reach it by judicial process has been eliminated by Section 541(a)(1). 4 *Collier on Bankruptcy* ¶ 541.02 (15th ed. 1979). However, it is equally clear that it was not the intent of Congress in enacting Section 541 to expand the debtor's rights against others more than they existed at the commencement of the case. H.Rep.No.95–595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep.No.95–989, 95th Cong., 2nd Sess. 82 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad. News 5963, 6323–24; 5787, 5868. The United States argues that debtor was not entitled to turnover of the license itself prior to filing, unless his tax liability was paid, *see* 26 U.S.C. § 6337, and that the act of filing a petition under the new Code does not create any new rights against the United States.

■ In resolving the question of what is "property of the estate", the court recognizes that both the debtor and the United States continue to have certain interests in the liquor license. Taking the view that property exists as a "bundle of sticks", neither the debtor nor the United States claims a totality of rights to the property. What the court must do, therefore, is examine the respective legal and equitable interests of the debtor and the United States and decide whether the debtor's interests are such that the license itself is property of the estate within the meaning of Section 541 of the Code.

Clearly, the debtor has and retains under Section 541 some legal and equitable rights in the liquor license. Moreover, throughout

the whole levy procedure the taxpayer's interests are protected.

The Internal Revenue Code itself provides that a person whose property has been levied upon shall have the right, before sale, to pay the amount due, together with expenses, and upon payment have the property restored to him and the levy discharged. 26 U.S.C. § 6337. *See United States v. Sullivan*, 333 F.2d 100, 117–18 (3d Cir. 1964). The property owner's right to redemption of his property has long been recognized by the courts. See *Atwood v. Weems*, 99 U.S. 183, 25 L.Ed. 471 (1879); *Tacey v. Irwin*, 18 Wall. 549, 85 U.S. 549, 21 L.Ed. 786 (1873); *Bennett v. Hunter*, 9 Wall. 326, 76 U.S. 326, 19 L.Ed. 672 (1870); *Anselmo v. James*, 449 F.Supp. 922, 925 (D.Mass.1978); *Samet v. United States*, 242 F.Supp. 214 (M.D.N.C. 1965). "An equity of redemption comes within the scope of 'all legal or equitable interests of the debtor in property.'" 4 *Collier on Bankruptcy* ¶ 541.07 (15th ed. 1979). Similarly, the right to redeem from a tax sale, *see* 26 U.S.C. 6337; *United States v. Sullivan, supra*, is a property right and under the old Act became an asset of the estate. *In re Argyle-Lake Shore Bldg. Corporation*, 78 F.2d 491 (7th Cir. 1935); 4 *Collier on Bankruptcy* ¶ 541.07 (15th ed. 1979). The Court notes, however, that a right of redemption in property may be substantially different, and substantially less than, a right to possession and use of that property.

The early redemption cases decided under the Code suggest that a taxpayer did not lose title to the levied upon property until sale, when it passed then to the purchaser or to the United States.[11] As the Court in *Bennett v. Hunter* said:

tion 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate...." 124 Cong.Rec. H11,096 (Sept. 28, 1978).

11. The regulations supplementing the Internal Revenue Code support an inference that the United States upon levy does not take title to

the property, if at all, until the tax sale. Treas. Reg. Sec. 301.6335(e), T.D. 7180, 1972 provides:

Before the sale the secretary or his delegate shall determine a minimum price for which the property shall be sold, and if no person offers for such property at the sale the amount of the minimum price, the property shall be declared to be purchased by the United States; otherwise the property shall be declared to be sold to the highest bidder.

What preceded the sale was merely preliminary, and independently of the sale, worked no divestiture of title. The title, indeed, was forfeited by non-payment of the tax; in other words, it became subject to be vested in the United States and, upon public sale, became actually vested in the United States or in any other purchaser; but not before such public sale. It follows that in the case before us the title remained in the tenant for life with remainder to the defendant in error, at least until sale; though forfeited, in the sense just stated, to the United States. *Bennett v. Hunter, supra,* 76 U.S. at 336–37.

There are two comments to make here. First, if indeed these cases do mean that "title" to the levied-upon property did not pass to the United States before sale, such "forfeited" title did not necessarily stay in the delinquent taxpayer either. Second, as will be developed subsequently, it is far from clear that the theory expressed in *Bennett v. Hunter* is still viable today.

The Internal Revenue Code also provides that "as soon as practicable" following the levy and seizure of the property the taxpayer is to be given notice of the seizure, public notice is to be given of the sale of the property and the property is to be sold not later than 40 days following such notice. 26 U.S.C. § 6335. Provisions providing for notice and prompt sale can be viewed as protection of the taxpayer's continual interest in the seized property.

In addition to the debtor's right of redemption in the seized liquor license, and right to notice of levy, the debtor may also have an equity interest in the property seized by levy. *See* Treas.Reg. § 301.-6342(b), T.D. 7180, 1972. Section 301.-6342(b) provides that "[a]ny surplus proceeds remaining [of monies realized from seizure or sale] shall ... be credited or refunded by the Secretary or his delegate to the person or persons legally entitled thereto." The government's right to receive payment of indebtedness extends only up to the amount of the tax. *United States v. Eiland,* 223 F.2d 118, 120 (4th Cir. 1955). Assuming, then, that the value of the liquor license seized exceeds the liability in respect of which the tax levy was made, the taxpayer has an equity in the seized liquor license.

At trial, Joseph Falsette, president of debtor corporation testified to his belief that the liquor license was worth $100,000.[12] While the court is not convinced that debtor has proved the value to be $100,000.00, it is satisfied that the liquor license is worth substantially more than the tax liability and is not of inconsequential value.[13]

While the Court recognizes that debtor continues to have certain "legal or equitable interests" in the liquor license, notably an equity of redemption, a right to notice of levy, and a right to the surplus upon sale of the liquor license, this court concludes that the United States also holds substantial interests in property levied upon to satisfy a tax deficiency pursuant to 26 U.S.C. § 6331.

Section 6331 of Title 26, U.S.C. provides: "If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary ... to collect such tax ... by levy upon all property ... on which there is a [tax] lien." 26 U.S.C. § 6331(a). "The term 'levy' ... includes the power of distraint and seizure by any means." 26 U.S.C. § 6331(b). Treasury Regulations provide that a "[l]evy may be made by serving a notice of levy." Treas. Reg. § 301.6331–1(a)(1), T.D. 7523, 1973. "[T]he service of such notice results in what is virtually a transfer to the government of the indebtedness, or the amount thereof necessary to pay the tax ...." *United States v. Eiland,* 223 F.2d 118, 121 (4th Cir.

---

**12.** There is some inconsistency by the debtor as to the value of the license. The debtor certified in the schedules that the value of the license was $75,000.00.

**13.** Section 542(a) of the Bankruptcy Code requires the delivery of property "unless such property is of inconsequential value or benefit to the estate." The United States has not demonstrated that the property is of inconsequential value or benefit to the estate.

1955). "[A] valid and effective levy under Section 6331(a) of the Internal Revenue Code of 1954, 26 U.S.C. 6331(a) is 'an absolute appropriation in law,' and a seizure of the property levied upon, tantamount to a transfer of ownership." *United States v. Pittman*, 449 F.2d 623, 626 (7th Cir. 1971); *United States v. Sullivan*, 333 F.2d 100, 116 (3d Cir. 1964); *United States v. O'Dell*, 160 F.2d 304, 307 (6th Cir. 1947). "Nowhere does the Code indicate any action beyond the levy itself which is necessary to place title in the Government to enable it to ... convey [the property]." *Pittman, supra* at 627. The *Pittman* case, which involved levy on real property, further indicated that once the government had effectively levied upon and seized the property, and exercised the rights of an owner to control property, the taxpayer could justly conclude that "he has no further right to deal with the property." *Id.*

Both the United States Supreme Court and the Third Circuit have indicated in recent cases that the United States by levy acquires a substantial claim to the property levied upon—a claim close to that of ownership.

In *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), the Supreme Court, deciding the scope of the bankruptcy court's summary jurisdiction,[14] held that assets transferred by a debtor to an assignee for the benefit of creditors, prior to bankruptcy, and levied upon by the IRS pursuant to 26 U.S.C. § 6331 prior to bankruptcy, need not be turned over to the receiver, and were not within the summary jurisdiction of the bankruptcy court. 421 U.S. at 332–33, 95 S.Ct. at 1730. *See also Cline v. Kaplan*, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944); *Galbraith v. Vallely*, 256 U.S. 46, 41 S.Ct. 415, 65 L.Ed. 823 (1921). In its holding that the United States was entitled to have its claim against assets considered in a plenary suit, the Court stressed the fact that the United States was a "bona fide adverse claimant." *Id.* 421 U.S. at 337, 95 S.Ct. at 1732.

The *Phelps* Court discussed the effect of a tax levy:

Historically, service of notice has been sufficient to seize a debt, *Miller v. United States*, 11 Wall. 268, 297 [20 L.Ed. 135] (1871), and notice of levy and demand are equivalent to seizure. See, *e. g., Sims v. United States*, 359 U.S. 108 [79 S.Ct. 641, 3 L.Ed.2d 667] (1959). The levy, therefore, gave the United States full legal right to the $38,000 levied upon as against the claim of the petitioner receiver. *Id.* at 337, 95 S.Ct. at 1732.

The levy "created a custodial relationship between the assignee and thereby reduced the $38,000 to the United States' constructive possession." *Id.* at 334, 95 S.Ct. at 1731. In strong *dictum* the Court noted that "the pre-bankruptcy levy displaced any title of [debtor]." *Id.* at 337, n.8, 95 S.Ct. at 1732, n.8.

The Third Circuit in *In re Pittsburgh Penguins Partners*, 598 F.2d 1299 (3d Cir. 1979) followed the lead of the *Phelps* court in denying summary jurisdiction of the Bankruptcy Court over assets levied upon and seized by the IRS pursuant to 26 U.S.C. § 6331, prior to the filing of a Chapter XI petition. The Third Circuit relied on *Phelps'* determination that levy gave the United States "full legal right" to sums levied upon, *Pittsburgh, supra* at 1302; *See Phelps, supra*, 421 U.S. at 337, 95 S.Ct. at 1732. The *Pittsburgh* court further stated that the *Phelps* court's indication that the levy effectively transfers "full legal right" to the property levied upon was sufficient to give the government a "substantial adverse claim of ownership as well". 598 F.2d at 1302. The Third Circuit did not decide whether the levy was sufficient to transfer full legal title to the assets to the United States.

Therefore, whether or not the United States, by levy, technically acquires title to the property seized, the United States does acquire a substantial interest that approaches that of an owner and the "full legal right" to the license as against the

---

14. The United States has not challenged, nor could it challenge, the jurisdiction of the Court to determine the complaint of the debtor-in-possession. 28 U.S.C. § 1471(b).

debtor. The government by levy acquires the right to sell the property and apply the proceeds to debtor's tax liability. 26 U.S.C. § 6331; Treas.Reg. §§ 301.6335, 301.6335–1, T.D. 7180, 1972. The United States is under no obligation to return the property unless the tax liability is met. *See* 26 U.S.C. § 6337.

The Court, in examining the interests of both the debtor and the United States, and in reliance on *Phelps* and *Pittsburgh*, must conclude that the United States has a significantly greater interest in the liquor license. Property levied upon and seized by the United States government for the collection of taxes pursuant to 26 U.S.C. § 6331 prior to the filing of a petition under the Bankruptcy Code is not "property of the estate" within the meaning of Section 541.[15] It is not property that may be used, sold or leased under Section 363 of the Code. The court will, therefore, enter a judgment of no cause of action on the complaint of debtor seeking turnover of the liquor license pursuant to Section 542 of the new Bankruptcy Code.[16] The attorney for the United States shall submit a judgment in accordance with this opinion, consented to as to form by debtor's attorney, within 10 days of the date hereof.

---

**15.** The Court's decision that the liquor license itself is not "property of the estate" in this particular instance does not mean that the United States is free to sell the license. The stay of Section 362 of the Code may serve to protect the debtor's right of redemption. 11 U.S.C. § 362(a).

**16.** This decision is limited to a pre-filing levy by the Internal Revenue Service. The Third Circuit has stressed that the statutory levy in favor of the government "is substantially broader in scope than anything known to the common law." *United States v. Sullivan*, 333 F.2d 100, 116 (3d Cir. 1964). The statutory purpose of such a broad power is to protect the flow of revenue to the government. *Id. See also G. M. Leasing Corp. v. United States*, 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1976); *Bull v. United States*, 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935). No opinion is expressed with respect to a pre-filing seizure by a secured party under Article 9 of the Uniform Commercial Code or a pre-filing levy to enforce a judgment in favor of a private party.