In re DEVAULT MANUFACTURING COMPANY, Debtor.

DEVAULT MANUFACTURING COMPANY, Plaintiff,

v.

UNITED HYDRAULICS CORPORATION, Defendant.

Bankruptcy No. 79–620EG.

United States Bankruptcy Court, E. D. Pennsylvania.

Dec. 20, 1979.

Adelman & Lavine, Philadelphia, Pa., James Adelman, Philadelphia, Pa., and Hope, Portnoff & Grant, Paoli, Pa., co-counsel for the debtor-plaintiff.

Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., Nicholas A. Leonard, Philadelphia, Pa., for defendant.

Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for the Creditors' Committee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The case before the court involves the application of sections 60 and 67a(1) to a lien created by levy on certain personal property and to a garnishment lien and payment pursuant to that garnishment lien. The application of those sections depends upon the determination of the solvency or insolvency of the debtor which turns on the valuation to be given an account receivable which is the subject of a complex lawsuit.

On April 10, 1979, Devault Manufacturing Company ("Devault") filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. The instant complaint was brought by Devault as debtor in possession against United Hydraulics Corporation ("United") to void a lien created by levy on certain personal property of Devault and to recover the sum of $3,623.87 which constitutes the proceeds of a garnishment of Devault's prebankruptcy bank account.

On June 2, 1978, United brought a breach of contract suit against Devault for failure to pay for certain hydraulic cylinders which Devault had ordered from United. That suit resulted in a settlement agreement, dated September 25, 1978, which set up a payment and delivery schedule. That settlement agreement was reduced to judgment on September 26, 1978, pursuant to a joint motion for entry of judgment. Devault thereafter failed to comply with the payment schedule of the agreement whereupon United filed writs of execution against Devault and The Jefferson Bank ("the Bank"), seeking $30,943.88 plus interest, representing the balance due on the judgment. The United States Marshal served the writ on the Bank on January 3, 1979, and on Devault on January 5, 1979.

On March 2, 1979, United secured an order of judgment against the Bank in the amount of $3,623.87, which sum was subsequently paid by the Bank to United. After securing an order, dated February 9, 1979, and after proper advertising, a sale of Devault's tangible personal property was scheduled for March 27, 1979, but was apparently never held.[1]

The instant case is an adversary proceeding brought by Devault as debtor in possession to have the liens (of garnishment and of levy) of United declared null and void pursuant to section 67a(1) of the Bankruptcy Act and to recover the money paid to United by the Bank as a voidable preference under section 60 of the Act.

---

1. One of the items levied upon (a crane) was also the subject of a separate action by Columbia Gulf Transmission Company ("Columbia Gulf") against Devault and so, after a hearing before Judge Huyett, the crane was removed from the proposed Marshal's sale and given to Columbia Gulf after it had posted a bond, pending a final adjudication on the issue of superior right to the crane.

### 1. The Court's Summary Jurisdiction

■ The initial question presented to the court is whether this court has summary jurisdiction over the issues presented. Since it appears that counsel for United, in their brief, have consented to this court's summary jurisdiction with respect to the issue of the garnishment lien and the proceeds of that garnishment, this court has summary jurisdiction over that issue.[2] With respect to the lien created by the levy on the personal property of Devault, we conclude that we have summary jurisdiction to determine if that lien is null and void pursuant to section 67a(4).[3]

### 2. The Solvency of the Debtor

Having jurisdiction, we turn next to the question of the insolvency of the debtor on certain dates which will become relevant under sections 60 and 67a(1). The Act defines insolvency in section 1(19) thus:

A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property . . . shall not at a fair valuation be sufficient in amount to pay his debts.[4]

With respect to the "fair valuation" which courts assign to accounts receivable, Collier states:

Thus NOTES OR ACCOUNTS RECEIVABLE are not appraised at their face value but on the basis of the prospect at the critical date of the collectibility within a reasonable time depending on the solvency of the obligors, the presence or absence of a serious dispute over their

validity or the availability of other defenses.[5]

With respect to how courts value accounts receivable which are disputed, Collier states:

The existence of a serious dispute over the validity of a note or account has induced the courts to either appraise it under a heavy discount or to disregard it in toto in the valuation process, presumably in order to avoid the necessity of going into collateral issues.[6]

In the instant case there is ample evidence that one of Devault's accounts receivable (that of Columbia Gulf) is seriously disputed. That receivable was listed on Devault's 1978 financial statements at a value of $985,000. However, evidence was presented that in December, 1978, Columbia Gulf instituted suit against Devault alleging a breach of the contract on which that receivable is based, and seeking approximately $400,000 in damages. As a result of that suit, the attorney who represents Devault in the Columbia Gulf case testified that, in his opinion, Devault was not likely to get more than half of the $985,000. He also testified that the case was extremely complex and would not be concluded quickly.

Thus, on the facts presented, it is clear that the Columbia Gulf receivable is seriously disputed and was seriously disputed at least as early as December, 1978. Consequently, there is authority for us to place a value of zero on that account as an asset.[7]

---

**2.** See 8 Collier on Bankruptcy § 311, ¶ 3.01[6] (14th ed. 1978).

**3.** Section 67a(4) states in part:

The court shall have summary jurisdiction of any proceeding by the trustee or debtor, as the case may be, to hear and determine the rights of any parties under this subdivision. 11 U.S.C. § 107a(4). The case cited in the defendant's brief, *In the Matter of Pittsburgh Penquins Partners v. Equibank,* 598 F.2d 1299 (3d Cir. 1979), is distinguishable from this case in that in that case the receiver was seeking to prevent the payment of escrowed money to the government by operation of sections 57j and 62a(1). *Those sections do not have special subsections, similar to section 67a(4) in the*

instant case, which give the court summary jurisdiction and therefore, the court was without summary jurisdiction because the property was not in the actual or constructive possession of the debtor at the date of filing or in the hands of a third party who had no substantial adverse claim to it.

**4.** 11 U.S.C. § 1(19).

**5.** 1 Collier on Bankruptcy § 1(19) ¶ 1.19[3] pp. 125–27 (14th ed. 1978).

**6.** *Id.* at p. 126 n. 22.

**7.** *See* cases cited in 1 Collier on Bankruptcy § 1(19), ¶ 1.19[3] pp. 125–27 (14th ed. 1978).

This would make Devault insolvent from December, 1978, to its filing under Chapter XI on April 10, 1979. Even if this court were to accept the valuation of the receivable by Devault's attorney (half of the $985,-000) Devault would still be insolvent during that time period.

Therefore, we conclude that Devault was insolvent at least from December, 1978, through April 10, 1979.

### 3. The Application of Section 67a(1).

Section 67a(1) of the Act states, in part: Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this Act by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent . . . .[8]

In the instant case, it is clear that the garnishment lien and the lien of levy on the personal property of Devault are liens by legal process which come within the scope of section 67a(1). By Pennsylvania law these liens attached on January 3 and 5, 1979, respectively,[9] and, consequently, they were obtained within four months of the filing under Chapter XI (April 10, 1979) and at a time when the debtor was insolvent (as found in Part 2 above).

Thus, by operation of section 67a(1), we find that United's garnishment lien and the lien of levy on Devault's personal property are null and void.

### 4. The Garnishment Proceeds.

The court is now faced with the question of whether Devault as the debtor in possession may recover the money which was obtained by United by its garnishment lien. Although we have concluded that the garnishment lien is void under section 67a(1), Devault has no remedy under that section for the recovery of the money since it was paid over to United prior to Devault's filing.[10] However, that payment may constitute a preference under section 60a(1) and be voidable under section 60b. Section 60a(1) of the Act states:

A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.[11]

In the instant case, the payment of money by the Bank to United constituted a transfer of property of the debtor to a creditor on account of an antecedent debt made while the debtor was insolvent (March, 1979) and within four months of the filing in Chapter XI (April 10, 1979). Therefore, the payment by the Bank to United was a preference.

Section 60b of the Act states, in part: Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent.[12]

In the instant case, the transfer was made sometime in March, 1979. Although, as was found above, Devault was insolvent from December, 1978, to April 10, 1979, there is no evidence that United knew of that insolvency *until* January 24 and 30, 1979. On those dates United took the depositions of Devault's president. There is evidence by

---

8. 11·U.S.C. § 107a(1).

9. *See, e. g., In re Boylan,* 65 F.Supp. 105 (E.D. Pa.), aff'd. 157 F.2d 518 (3d Cir. 1946).

10. 4 Collier on Bankruptcy § 67, ¶ 67.10 at p. 136 (14th ed. 1978).

11. 11 U.S.C. § 96a(1). Section 1(30) defines transfer to include a payment. 11 U.S.C. § 1(30).

12. 11 U.S.C. § 96b.

Devault's president that at those depositions he gave United's attorneys a financial statement which showed that Devault was insolvent and he told United's attorneys of the problems Devault was having with the Columbia Gulf account receivable, as well as with other accounts receivable.[13] Although United's attorney stated at the trial of the instant complaint that the depositions did not show that the president of Devault had made those statements counsel's statement is not proper evidence before this court and the depositions, although in the hands of United's attorneys, were never offered into evidence.[14]

▉ Therefore, we must conclude that United knew or had reasonable cause to know of Devault's insolvency at the time of the depositions at the end of January, and therefore knew or had reasonable cause to know of Devault's insolvency at the time they received the payment from the Bank sometime in March. Consequently, the payment from the Bank to United is a voidable preference under section 60.[15]

### 5. Conclusion.

We conclude, therefore, that the garnishment lien and the lien of levy upon Devault's personal property obtained by United within four months of Devault's filing under Chapter XI were obtained at a time when Devault was insolvent and are, consequently, null and void pursuant to section 67a. Further, the payment by the Bank to United as a result of the garnishment lien was a preference according to the terms of

section 60a and, consequently, is voidable pursuant to section 60b because it was made at a time when United had reasonable cause to know of Devault's insolvency.

---

**13.** Transcript of the trial of the complaint of *Devault Manufacturing Co. v. United Hydraulics Corp.* at pp. 59 & 61 and 81–83.

**14.** Id. at p. 98.

**15.** *See* 4 Collier on Bankruptcy § 67, ¶ 67.10 at p. 136 n. 11 (14th ed. 1978). Collier addresses a hypothetical *exactly on points with the instant* case and comes to the same conclusion as this court.

On the other hand if the garnishee lien was obtained when *the debtor was insolvent and* the other elements of a preferential transfer existed . . ., but the transfer was not voidable because the creditor did not then have *reasonable cause to believe his debtor to be* insolvent . . ., does subsequent accept-

ance of payment, in satisfaction of the lien, at a time the creditor has reasonable cause to believe his debtor to be insolvent constitute a preference? The correct answer is believed to be "yes". Here it will be noted that the garnishee lien is not voidable under § 60b, but is voidable under § 67a since the creditor's knowledge of insolvency is immaterial . . . . Acceptance of payment by the creditor is a transfer by the debtor of his property within the terms of §§ 60 and 1(30) . . ., and since it is to obtain satisfaction of a lien voidable under § 67a, the payment depletes the estate, and, the other elements of a voidable preference then being present, the creditor-transferee should be compelled to disgorge.