**In re KEYPORT SUMMIT, INC., a Colorado corporation; Summit Skiwear; Wintersport, Ltd., Debtors.**

**Alan CHARNES, Executive Director, Department of Revenue, State of Colorado, Plaintiff,**

**v.**

**KEYPORT SUMMIT, INC., a Colorado corporation; Summit Skiwear; Wintersport, Ltd., Defendants.**

**KEYPORT SUMMIT, INC., a Colorado corporation, Plaintiff,**

**v.**

**Alan CHARNES, Director, Colorado Department of Revenue; Bank of Breckenridge; First City Bank of Dallas, Texas, Defendants.**

**Bankruptcy Nos. 81 K 1164, 81 K 1165.**

United States Bankruptcy Court, D. Colorado.

June 24, 1981.

Sidney B. Brooks, Smart, DeFurio & Brooks, Denver, Colo., for Keyport Summit, Inc.

Billy Shuman, Sp. Asst. Atty. Gen., Denver, Colo., for Alan Charnes.

Norman D. Haglund, Kelly, Haglund, Garnsey & Kahn, Denver, Colo., for First City Bank of Dallas, Texas.

Brian Muldoon, Holland & Hart, Denver, Colo., for Bank of Breckenridge.

Robert B. Rottman, Denver, Colo., for the Creditors' Committee.

**104**

MEMORANDUM AND ORDER CONTIN-UING STAY, INJUNCTION, AND ORDER FOR ADEQUATE PROTEC-TION FOR USE OF CASH COLLAT-ERAL

GLEN E. KELLER, Jr., Bankruptcy Judge.

The Court has before it two complaints which were combined for trial. The first complaint seeks relief from the automatic stay imposed by 11 U.S.C. § 362 to permit the State of Colorado, Department of Revenue, to sell, pursuant to distraint warrants, certain property of the Debtor to satisfy unpaid taxes. The second complaint by the Debtor seeks mandatory injunction against the State of Colorado to allow access to premises seized by execution of distraint warrants and further seeks to be allowed to use collateral, including cash collateral, in the ordinary course of business by providing adequate protection for a variety of lien holders. The First City Bank of Dallas has counterclaimed for relief from the stay. The facts are simple and relatively undisputed.

The Debtor is one of the largest, if not the largest, retailer of skiwear and other clothing items in the community of Breckenridge, Colorado, one of the major ski areas within the State. Additionally, the Debtor is the largest renter of skis and related equipment in Breckenridge. It operates out of four store locations in that community and has attendant warehouse facilities and other real property. Some of the store locations are owned by the Debtor, and others are leased. On May 5 and May 7, 1981, the State of Colorado seized all of the retail locations of the Debtor and, specifically, all of the inventory, stock in trade, furniture, and fixtures contained therein, pursuant to distraint warrants issued by the Executive Director of the Department of Revenue, State of Colorado. The State seeks delinquent state sales taxes; county sales taxes and city sales taxes, also collected by the State; and state wage withholding taxes due and owing. On May 12, 1981, the Debtor filed a petition with this Court seeking relief under Chapter 11 of Title 11,

United States Code. The State did not seize warehouse properties occupied by the Debtor and the merchandise therein contained. The inventory, furniture, and fixtures of the Debtor were subject to two liens; one in favor of the Bank of Breckenridge in the face amount of $100,360.00, the other in favor of the First City Bank of Dallas in the face amount of $40,703.54. The Bank of Breckenridge additionally holds a first deed of trust on real property owned by the Debtor which has an appraised value of $430,000.00 and is apparently subject to a binding contract of sale scheduled to close in early 1982 for the sum of $380,000.00. A portion of the deed of trust may be subject to attack as a preferential transfer. The State claimed at the time of trial that the taxes, together with interest and penalties due, were $131,356.58, with certain additional income taxes also due.

The items seized by the State are skis, boots, and poles used in the Debtor's retail operation and having a value at cost to the Debtor of $249,000.00, which represents approximately 20% less than wholesale price. Most of the skis, boots, and poles are brand new and have not been rented or used. Also seized were soft goods having a value at cost, or wholesale, of approximately $150,000.00 and fixtures and equipment with a book value of $60,000.00. These items are contained in four store locations in Breckenridge. The Debtor holds an additional $90,000.00 of skis, boots, and poles and $136,000.00 of soft goods in warehouses, which items have not been seized by the State but which are subject to the liens claimed by First City Bank of Dallas, Texas, and the Bank of Breckenridge. The Debtor's business operations were effectively halted by the distraint, although it is clear that the business activity was at a substantially reduced level because of the time of year. The Debtor's heaviest business activity is from November through April, and its second active time is June through September.

The Bank of Breckenridge and the Debtor have agreed that the Debtor, subject to

Court approval, will grant the Bank a new deed of trust upon the same real property, which will constitute adequate protection to the Bank of Breckenridge for the use of collateral. The First City Bank of Dallas and the Debtor have agreed that the sale of soft goods may proceed and that 50% of the gross sales revenues net of taxes will be preserved for the retirement of its debt and the tax liens of the State. As additional adequate protection, the First City Bank of Dallas, according to the agreement, will receive a second deed of trust upon the Debtor's business building at 111 Main Street in Breckenridge. The building has a first deed of trust obligation of $96,000.00 and a disputed lien of $150,000.00. The appraised value of the building is $525,000.00.

The adequate protection agreed between the Debtor and the two banks, which contemplates the sale of merchandise and normal business operations, cannot be operative until a determination of the rights of the State has been made. This case appears to be another in a series of cases seeking a determination of the rights of a debtor in Chapter 11 or a trustee against those of a taxing entity or creditor who has seized property of the debtor prior to the filing of a petition in the bankruptcy court, whether the seizure be by distraint for the payment of taxes or by repossession in contemplation of lien enforcement. The latest in that series is *In re Avery Health Center, Inc.*, 8 B.R. 1016 (W.D.N.Y.1981), an appeal from a bankruptcy court decision ordering turnover by the Internal Revenue Service of property upon which it had levied prior to the petition. The district court reversed the bankruptcy court order, concluding that the bankruptcy court could not order turnover pursuant to 11 U.S.C. § 542(a) of property so levied by the IRS. The determination in that case appears to follow the result reached in *In re Winfrey Structural Concrete Co. v. Internal Revenue Service*, 5 B.R. 389 (B.D.Colo.1980), and *In re Bush Gardens, Inc.*, 10 B.R. 506, 1 C.B.C.2d 134 (Bkrtcy.B.D.N.J.1979). Contrary decisions have been reached in *Cross Electric Company, Inc., v. United States*, 9 B.R. 408, 6 B.C.D. 1348 (W.D.Va.1980); *Matter of Au-* *rora Cord and Cable Co.*, 2 B.R. 342 (B.N.D. Ill.1980); and *Troy Industrial Catering Service v. State of Michigan*, 2 B.R. 521 (B.E.D. Mich.1980).

■ The decision in *Avery, supra*, is particularly significant, however, in that it recognizes that property interests can exist in property previously levied upon, which interests are subject to protection by proceedings in the bankruptcy court. The judge noted that the right to receive a surplus from sale may well be a right subject to protection. Similarly, here, property far exceeding in value any claim of the levying agency has been seized. The ownership of the surplus property is a right subject to protection as well. As earlier noted, the State claims a first lien by reason of its levy in total property values at wholesale or below cost to the Debtor of $399,000.00. The $131,000.00 claim of the State of Colorado is less than one-third that amount. Whether one follows the "balancing test" utilized in *Bush Gardens, supra*, or simply recognizes that the interests of the State can be adequately protected under the provisions of 11 U.S.C. § 361 without retention of the entire property seized, the result is apparent. The rehabilitative purposes of Chapter 11 of the Bankruptcy Code need not be completely in conflict with the interests of the levying taxing entity.

The state statutes under which the distraint warrant issued only allow seizure of goods and property which at sale will pay the tax claim. Clearly, further proceeds of sale or excess property must be surrendered to the owner or taxpayer. Here, seizure of the skis, boots, and poles valued at $249,-000.00 adequately protects the claim of the State. The balance of the goods and property seized is not necessary to that purpose.

■ The automatic stay need not be modified at such time as the creditor is adequately protected and the property is necessary for a successful reorganization of the Debtor. Here all of the property is in fact necessary if the Debtor is to continue as a viable business. The forecast of the Debtor is that it will be able, through the

sales of soft ware during the summer and fall months, to retire the entire indebtedness to the State and to the First City Bank of Dallas. The Court concludes that the adequate protection available to the State and the adequate protection agreed upon between the First City Bank of Dallas and the Debtor are both sufficient to preserve intact the stay and to permit the Debtor to continue in business. The Court further concludes that the grant of additional protection to the Bank of Breckenridge is in the best interests of the rehabilitation of the Debtor and, therefore, of all the creditors and should be allowed. Now, therefore, it is

ORDERED:

1. Defendant Alan Charnes shall turn over to the Debtor-in-Possession all of the soft ware seized pursuant to distraint and shall retain possession of all of the skis, boots, and poles so seized.

2. That the Debtor-in-Possession shall be permitted to operate the retail business of the Debtor insofar as the sale of soft goods is concerned and shall preserve 50% of the gross sales proceeds net of taxes, which sum shall be divided 65% to the State of Colorado and 35% to the First City Bank of Dallas in retirement of the lien interests by those entities. Debtor shall account to Defendants Alan Charnes and First City Bank of Dallas on a monthly basis, indicating all sales for the reporting period, together with an indication of the disbursement of the 50% reserved proceeds.

3. The Defendant Alan Charnes shall not prohibit access to business premises of the Debtor, but the Debtor and Defendant Charnes shall arrange a mutually satisfactory location for the storage of the skis, boots, and poles so seized.

4. The automatic stay imposed by 11 U.S.C. § 362 shall not be modified herein to permit lien enforcement by any of the Defendants.

5. The First City Bank of Dallas shall be provided additional adequate protection by the grant of a deed of trust on the property located at 111 Main Street, Breckenridge, Colorado. The Defendant Bank of Breckenridge shall be granted additional adequate protection by a new deed of trust upon the property in Spruce Valley Ranch, Summit County, Colorado.

6. Each party hereto shall, within 10 days of the date hereof, file a written request for the withdrawal of exhibits received in evidence or in the possession of the Court. Upon this Order becoming final, exhibits so requested shall be returned to the parties, and any party not requesting return of exhibits shall be deemed to have waived such claim, and the Clerk may destroy or otherwise dispose of the exhibits as the Clerk shall so determine. As used herein, "Order becoming final" means that this Order shall not be subject to further appellate review.