In the Matter of BREWSTER–RAYMOND
COMPANY, Bankrupt.

UNITED STATES of America,
Appellant,

v.

Ralph H. COLEMAN, Trustee in Bankruptcy, Appellee.

No. 15949.

United States Court of Appeals
Sixth Circuit.

April 30, 1965.

* Senior Judge of the Tenth Circuit, sitting by designation.

Karl Schmeidler, Dept. of Justice, Washington, D. C., for appellant, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on the brief, Merle M. McCurdy, U. S. Atty., Dominic J. Cimino, Asst. U. S. Atty., Cleveland, Ohio, of counsel.

Clair E. Whitmer, Akron, Ohio, for appellee.

Before CECIL, O'SULLIVAN and EDWARDS, Circuit Judges.

CECIL, Circuit Judge.

This appeal is from a judgment of the United States District Court for the Northern District of Ohio, denying to the United States of America the right to recover tax penalties and interest on the penalties from the bankrupt estate of Brewster-Raymond Company. The United States of American is the defendant-appellant and Ralph H. Coleman, trustee of the bankrupt company, is the plaintiff-appellee. They will be referred to herein as the Government and the Trustee, respectively.

The facts are largely stipulated by the parties. The bankrupt is an Ohio corporation with its principal place of business in Summit County, Ohio. Its petition in bankruptcy was filed on December 27, 1957, and it was adjudicated a bankrupt. The government filed a timely proof of claim, with amendments, which reads as follows:

| Item | Kind of Tax | Date of Assessment | Amount Due |
|---|---|---|---|
| 1. | Penalty (WFT tax, quarter ended 12–31–56) including assessed interest | 9–30–57 | $2,422.93 |
| | Additional accrued and unassessed interest (to 12–27–57) .............. | | 30.71 |
| 2. | Penalty (WFT tax, quarter ended 3–21–57) including assessed interest* | 9–23–57 | 2,273.43 |
| | Accrued and unassessed interest (to 12–27–57) ...................... | | 35.58 |
| 3. | Penalty (WFT tax, quarter ended 6–30–57) including interest assessed* | 9–23–57 | 871.28 |
| | Accrued and unassessed interest (to 12–27–57) ...................... | | 13.64 |
| 4. | WFT tax, (quarter ended 9–30–57) including assessed interest (to 12–27–57)* ...................... | 11–15–57 | 8,477.62 |
| | Accrued and unassessed interest (to 12–27–57) ...................... | | 142.87 |
| 5. | WFT tax, (quarter ended 12–31–57) | 2–14–58 | 5,504.92 |
| 6. | FUTA tax, including assessed interest (Yr. 1956)* ...................... | 5–23–58 | 386.52 |

Prior to the filing of the petition in bankruptcy, the bankrupt was engaged in the performance of a contract for the United States Navy. The sum of $10,511.81 became due to the bankrupt from the government, on this contract, on November 18, 1957. On December 2, 1958, (nearly one year after the bankruptcy petition was filed) the govern-

---

\* "Assessed interest" is interest on principal claim computed to date of assessment.

ment, through an inter-agency accounting, credited the bankrupt's account for federal tax assessments, with the amount owed by it to the bankrupt. This credit was made up of taxes, $5891.44, interest on taxes, $287.19, penalties, $4124.37, and interest on penalties, $208.81.

Relating this credit to the proof of claim, we find that it is composed of:

| | | | | |
|---|---|---|---|---|
| Item 5, taxes | $5504.92 | —Accrued Interest, | | $275.25 |
| " 6, " | 386.52 | — " " | | 11.94 |
| Totals, " | $5891.44 | " " | | $287.19 |
| Item 1, penalty | $2422.93 | —Interest on penalty, | | $149.61 |
| " 2, " | 565.41 [1] | | | |
| " 3, " | 871.28 [2] | " " " | | 59.20 |
| " 4, " | 264.75 [3] | | | |
| Totals, penalties | $4124.37 | —Interest | | $208.81 |

As of November 21, 1957, Barnhill & Long, Inc., of Tarboro, North Carolina, was indebted to the bankrupt in the amount of $11,334.98. On the same date the government filed a "Notice of Levy" with Barnhill & Long, Inc. It was alleged in this "Notice of Levy" that the bankrupt was indebted to the government in the amount of $11,651.47 for Internal Revenue taxes. This amount consisted of $8477.62, taxes, $3144.71, penalties, and interest on the taxes of $29.14.

This claimed levy is made up from items of the proof of claim as follows:

| | | | |
|---|---|---|---|
| Item 4, taxes | $8477.62 | | |
| " 2, penalty | $2273.43 [4] | Interest on taxes | $20.86 |
| " 3, " | 871.28 [5] | " " " | 8.28 |
| Totals, penalties | $3144.71 | " " " | $29.14 |

———◆———

In appellant's brief it is claimed that the District Court denied its claim for penalties in the amount of $5567.64 and interest on penalties amounting to $79.93. These figures are arrived at by adding, respectively, the penalties and accrued interest of items 1, 2, and 3 of the proof of claim.

By agreement of the parties, an order was entered on August 25, 1958, requiring Barnhill & Long, Inc. to turn over to the trustee the amount of its indebtedness ($11,334.98) to the bankrupt. This sum was to be held by the trustee pending a determination by the court of the various interests therein. Barnhill & Long, Inc. was thereafter released from any further liability on the account.

The Referee in Bankruptcy found additional facts as follows: On December 27, 1957, the bankrupt had unsecured creditors in the amount of $204,870.40 and had

---

1. The item of $565.41 penalty on the government credit is taken arbitrarily from $2273.43, item 2 on the proof of claim, the whole of which is included in the levy against Barnhill & Long, Inc., infra.

2. This is item No. 3 on the proof of claim and is included in both the credit and the levy against Barnhill & Long, infra.

3. This item was not included in the proof of claim. It is described as, "Depository receipt penalty (WFT taxes, quarter ended 9–30–57) including accrued interest (assessed 4–11–58)."

4. Refer to footnote 1.

5. Refer to footnote 2.

scheduled assets of $60,939.42. The bankrupt was hopelessly insolvent at the time the petition in bankruptcy was filed and also was insolvent on November 21, 1957. Items one, two and three on the proof of claim were for penalties and interest on WFT taxes, the taxes having been paid prior to bankruptcy.

The Referee in Bankruptcy disallowed the items of penalties and interest on penalties included in items one, two and three of the proof of claim. He allowed the claims for taxes and held that the $10,511.81 received by the revenue department from the Department of Navy should be applied against the taxes due, as stated in items four, five and six of the proof of claim. He also held that the government had a lien, for the balance of the taxes, against the funds held by the trustee from Barnhill & Long, Inc. The court affirmed the decision of the Referee.

The government appeals from the judgment of the District Court in disallowing the penalties and interest on penalties, as set forth in its credit on the navy claim and in its levy against Barnhill & Long, Inc. The question is whether Section 57, sub. j of the Bankruptcy Act is applicable under the facts of this case to bar the recovery of penalties by the government. Section 57, sub. j (Section 93, sub. j, Title 11 U.S.C.) provides:

> "Debts owing to the United States * * * as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, * * *."

We will consider first the government's claim in connection with the set-off of tax penalties owed by the bankrupt, against the government's indebtedness to the bankrupt on the navy contract.

The government claims that the Referee in Bankruptcy acted summarily in determining the rights of the parties in the funds arising out of the navy contract and without jurisdiction because the fund was neither in the actual or constructive possession of the trustee. Its theory was that the proceeding was one by the trustee to collect a debt from the United States on an adverse claim which it had denied. The government further claimed that it was entitled to have this issue determined in a plenary action.

Had the Navy Department refused to pay its debt to the bankrupt, the trustee's only recourse would have been to bring a plenary action in which the government could have cross-claimed for its taxes, penalties and interest. The government did not deny its indebtedness to the bankrupt. This debt was an asset of the bankruptcy estate. (Section 2, sub. a(7) of the Bankruptcy Act, Section 11, sub. a(7), Title 11, U.S.C.) The government not only admitted the debt, but, through its inter-agency accounting, it, in effect, paid the account to the trustee. In so doing, the government determined for itself what items on its proof of claim should be allowed to it. When it did this, it placed the fund in the jurisdiction of the bankruptcy court for the allowance or rejection of the items in its proof of claim for which it had taken credit.

United States v. Owens, 5 Cir., 329 F.2d 678, is not in point under the facts of this case. In the Owens case, the government was indebted to two bankrupts, and the bankrupts owed the government over twice as much in back taxes. There, the trustee filed a petition in the District Court for a determination of the rights of various parties to the funds held by the United States on the two contracts. The Fifth Circuit merely held that since the government had more than a colorable claim to the funds which it held, the funds were not subject to a summary turnover order, and could be set off against the taxes owed the government. In the case before us, the government took credit for the tax penalties on its own proof of claim, adjudicated its own case, and then said that the court had no jurisdiction to determine the validity of its claim for penalties as set forth in its proof of claim. The action of the referee was invoked upon objections of the trus-

tee, to the tax claims of the government. The government has cited no authority authorizing such an inter-agency set-off, other than Section 68 of the Bankruptcy Act. This section is not self-executing, and the benefits available under it can be had only on action by the bankruptcy court properly invoked. In Re Potts, 142 F.2d 883, C.A. 6, cert. den. 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423, First National Bank of Portland v. Dudley, 231 F.2d 396, C.A. 9.

We conclude that the question of the government's right to collect its penalties was properly before the court and that the bankruptcy court had jurisdiction to determine the question.

■■ The government's indebtedness to the bankrupt on the navy contract became due on November 18, 1957, prior to the bankruptcy, and at that time the bankrupt owed taxes equal to or in excess of the government's debt. On this basis the government argues that the set-off should have been allowed. The accounting adjustment and set-off was not made until nearly a year· after the bankruptcy petition was filed. The government was bound by the situation as it existed at the time it made its attempted set-off. There is no question but what the government had a right of set-off for any *legal* tax claims. United States v. Owens, 329 F.2d 678, C.A. 5; Sanders v. Commissioner, 225 F.2d 629, 637, C.A. 10; United States v. Roth, 164 F.2d 575, C.A. 2. See also, United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct 1599, 91 L.Ed. 2022; Swartzbaugh Mfg. Co. v. United States, 289 F.2d 81, 84, C.A. 6; Malman v. United States, 202 F.2d 483, 485, C.A. 2. The question is whether tax penalties can be legally collected or set off against a bankrupt estate.

Undergirding all of the arguments of government counsel is the persistent claim that the fund arising out of the government's indebtedness to the bankrupt never became a part of the bankruptcy estate. We have held that it did by reason of the government's own action in adjusting its accounts and attempting to allow its own claim for tax penalties. Whether by plenary action or however the question may be presented, there is the inescapable question of whether the government can collect penalties from a bankrupt estate.

Section 68 of the Bankruptcy Act (Section 108, Title 11, U.S.C.) provides for the set-off of mutual debts and credits between the estate of a bankrupt and a creditor. Subdivision b of that statute provides,

"A set-off or counterclaim shall not be allowed in favor of any debtor or bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 93 of this title; * * *."

The District Court held that the government could not collect penalties under Section 57, sub. j (Section 93, sub. j, Title 11, U.S.C.) and therefore they were not allowable under Section 57, sub. g (Section 93, sub. g, Title 11, U.S.C.) Section 57, sub. g is as follows:

"The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this title, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances."

Government counsel argue that Sections 68, sub. b and 57, sub. g are not contrary to the government's position, since Section 68, sub. b does not make any reference to Section 57, sub. j. We are not bound to choose between these two views. Section 57, sub. j definitely disallows the collection of penalties against a bankrupt estate. This section and Section 68 must be read so as to give effect to both. Certainly Congress never intended to bar the collection of penalties in one section of a statute and then by another section of the same statute permit them to be collected through a set-off. We must construe Section 68 to refer only to debts that may be legally collected.

It seems that this question was settled with finality by the Supreme Court in Simonson v. Granquist, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557. The Court said at p. 40, 82 S.Ct. at p. 538:

"We think, however, that the language of § 57, sub. j is itself a more dependable guide to its meaning than this argument from the general structure of the Bankruptcy Act. Unquestionably that language is broad enough to bar all penalties, whether secured by lien or not, and we think the section was designed to do precisely that. For it plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a 'pecuniary' loss. So understood, this section, which has been a part of the Bankruptcy Act since its enactment in 1898, is in keeping with the broad aim of the Act to provide for the conservation of the estates of insolvents to the end that there may be as equitable a distribution of assets as is consistent with the type of claims involved. Moreover, the prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some default or wrong. Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors."

 We agree with the District Court in its holding that tax penalties could not be set off against its debt to the bankrupt on the navy contract.

The government's contention concerning the fund arising from the indebtedness of Barnhill & Long, Inc. to the bankrupt is basically that the fund never became a part of the bankruptcy estate. In support of this it is argued that the taxes and penalties which were the subject of the levy were due before the petition in bankruptcy was filed and that the notice of levy having been delivered to Barnhill & Long, Inc. a month prior to bankruptcy, the possession of the fund was in the government.

Counsel for the government u. the term possession loosely, as evidenced by statements in their brief. " * * * that by virtue of its levy the government became possessed of this sum, * * * "; "The levy constitutes a seizure of the property and *effectuates an immediate transfer* of it to the United States. Thus, by force of its levy *the United States became the owner of the debt due the taxpayer.*" "Service of the notice of levy *results, by operation of law, in the appropriation or transfer* of the debt to the United States * * * "; "As a result of the levy * * *, prior to bankruptcy the Barnhill & Long debt *became the property* of the United States. * * * " (Emphasis added.)

Counsel seem to use the word "possession" in the sense of "title" or "ownership". We take it that counsel mean that title to the fund had passed to the government. We are of the opinion that if the effect of the levy amounts to anything short of the passing of title, it would constitute but a lien in favor of the government.

██ The fund under consideration was an asset of the bankruptcy estate. It was the function of the bankruptcy court to pass on any alleged adverse claims to any claimed assets of the estate. Section 2, sub. a(2) and (7) Bankruptcy Act (Section 11, sub. a(2) and (7), Title 11, U.S.C.) It was incumbent upon the government to make its claim, whether it be a lien or ownership, against the trustee in bankruptcy. This is the nature of the proceeding we have before us. We proceed to consider the effect of the levy against Barnhill & Long, Inc. and determine what the government obtained by it.

All of the authorities [6] cited by the government deal with the perfection of liens

6. Goggin v. Calfornia Labor Division, 336 U.S. 118, 69 S.Ct. 469. 93 L.Ed. 543;

In re Cherry Valley Homes, Inc. v. United States, 255 F.2d 706, C.A.3, cert.

**910**

on personal property of bankrupts. Section 67, sub. c of the Bankruptcy Act (Section 107, sub. c, Title 11, U.S.C.) requires that liens on personal property must be accompanied by possession, or the priority granted to the United States (for instance) under Section 67, sub. b (Section 107, sub. b, Title 11, U.S.C.), will be lost. Authorities cited by the government merely hold that a levy accompanied by notice would be sufficient to reduce intangible personal property of a bankrupt to "possession" and thereby perfect the lien and consequent priority rights granted by Section 67, sub. b. Counsel for the United States has cited no authority, nor have we found any, that holds that the United States has anything more than a lien when it levies upon intangible personal property. Even in Goggin v. California Labor Division, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543, where the government levied upon, and actually had possession of, bankrupt's personal property, the Court held that the government had only a lien interest in the property.

■■ The government in its skillful attempt to show that the bankruptcy court took affirmative action against government property, asserts that "the Referee and the District Court committed error in overlooking the difference between a lien and a levy." The only distinction we perceive is that the levy (in the sense it is used here) is merely one of many means of perfecting a lien. A levy is a seizure of the property of another, but nothing more. It does not in and of itself operate to transfer title to the government. Thus, the only property of the government involved in the bankruptcy court's handling of the fund paid to the trustee by Barnhill & Long, Inc. is the government's property right in its lien, which by act of Congress is regulated under the jurisdiction of the bank-

ruptcy court as set down in the Bankruptcy Act. See, in particular, Sections 2, 17, 57, sub. j, 64 and 67, subs. b and c (Sections 11, 35, 93, sub. j, 104 and 107, subs. b and c, Title 11, U.S.C., respectively) of the Bankruptcy Act.

■■ We are not here presented with the question of determining what would happen if, prior to bankruptcy, Barnhill & Long, Inc. had willingly paid the government the amount of its levy, instead of resisting and holding the fund for the Bankruptcy court. The bankruptcy cut off any subsequent rights in the government, and from that point on, the fund was in the jurisdiction of the bankruptcy court. While the government perfected its lien and thereby preserved its priority, the bankruptcy adjudication prior to a turnover of the fund to the government gave the bankruptcy court summary jurisdiction to determine the respective rights to the fund. See Clarke v. Larremore, 188 U.S. 486, 23 S.Ct. 363, 47 L.Ed. 555. See also, Section 2, sub. a(2) and (7) (Section 11, sub. a(2) and (7), Title 11, U.S.C.) and Section 67, sub. a(4) (Section 107, sub. a(4), Title 11 U.S.C.) of the Bankruptcy Act. The fund contributed by Barnhill & Long, Inc., being part of the bankruptcy estate, must be administered according to the Bankruptcy Act.

We conclude that the levy of the government against the fund in the hands of Barnhill & Long, Inc. did not operate to pass title, but gave the government only a lien against the fund, as was held by the District Court. The collection of tax penalties and interest on those penalties from the bankruptcy estate was therefore barred by Section 57, sub. j of the Bankruptcy Act, in accordance with our ruling on the navy contract fund.

The judgment of the District Court is affirmed.

den., sub. nom. DuBois, Trustee v. United States, 358 U.S. 864, 79 S.Ct. 96, 3 L. Ed.2d 97; Division of Labor Law Enforcement v. United States, 301 F.2d 82, C.A.9; Rosenblum v. United States, 300 F.2d 843, C.A.1; United States v. Eiland,

223 F.2d 118, C.A.4; United States v. Manufacturers National Bank, 198 F. Supp. 157, N.D.N.Y.; and Boss Co. v. Board of Com'rs of Atlantic City, 40 N.J. 379, 192 A.2d 584.