In re ALPA CORPORATION, a Utah Corporation, Debtor.

ALPA CORPORATION,
Debtor-in-Possession,
Plaintiff,

v.

INTERNAL REVENUE SERVICE, United States of America, Defendant.

Bankruptcy No. 80–02546.
Civ. No. 80–0445.

United States Bankruptcy Court,
D. Utah.

May 15, 1981.

Robert Wily of Salt Lake City, Utah, for debtor, Alpa Corp.

Barbara Johnsen, Salt Lake City, Utah, for Internal Revenue Service and the U. S.

## MEMORANDUM OPINION

RALPH R. MABEY, Bankruptcy Judge.

Alpa Corporation is a small company engaged in the manufacturing of specialized equipment for use in the optical industry. On December 2, 1980, the Internal Revenue Service (IRS) levied upon and seized all equipment, inventory and other property on the business premises of Alpa Corporation and thereby terminated its business operations. On December 8, 1980, while the property was still in the possession of the IRS, but before it had been sold or otherwise disposed of, Alpa Corporation filed a Chapter 11 bankruptcy. On December 11,

1980, the debtor filed a complaint in the bankruptcy court to compel turnover of the property held by the IRS. The debtor also filed a motion for summary judgment in the case alleging no material facts to be in issue. The IRS responded with a motion to dismiss alleging that the Court lacked subject matter jurisdiction over the property and the cause of action pled. By stipulation of both parties, upon recognition of the urgency of the matter in that the debtor's operations were completely shut down, these motions were heard on December 12, 1980. The Court at that time ruled from the bench on the question before it, but reserved the right to supplement its ruling by written decision. This memorandum opinion is therefore issued to further supplement and explain the Court's previous ruling on the important issue of whether, in the case of a pre-bankruptcy levy by the IRS, the bankruptcy court has jurisdiction over the property seized so as to enable it to order turnover of the property under 11 U.S.C. § 542.

 11 U.S.C. § 542, which outlines the authority of the Court to order a turnover of property to the trustee or debtor-in-possession, states that:

> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Under 11 U.S.C. § 101(14), an "entity" includes a "governmental unit;" therefore, providing the property involved is "property that the trustee may use, sell, or lease under section 363," the Court may issue a turnover order against the IRS. Section 363(b) and (c) define property that the trustee may use, sell, or lease as being "property of the estate." The question, then, of whether the Court has jurisdiction over property levied upon pre-petition so as to compel turnover rests upon whether it is "property of the estate" under Section 541.

Among other subsections, not applicable here, 11 U.S.C. § 541(a) defines property of the estate as "the following property, wherever located: ... all legal or equitable interests of the debtor in property as of the commencement of the case." The legislative history to this provision emphasizes the pervasive reach of this provision:

> The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action [see Bankruptcy Act § 70a(6)], and all other forms of property currently specified in section 70a of the Bankruptcy Act § 70a, as well as property recovered by the trustee under section 542 of proposed title 11, if the property recovered was merely out of the possession of the debtor, yet remained "property of the debtor." The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest, or leasehold interest, for example.

H.R.Rep.No.95–595, 95th Cong., 1st Sess., at 367 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess., at 82 (1978), U.S.Code Cong. & Admin.News 5787. Under this definition, it would appear that if the debtor had any interest at all, legal or equitable, left in the property which has been levied on, that property is "property of the estate."

The IRS argues that its levy under 26 U.S.C. § 6331 amounts to a "virtual transfer" of the property levied upon to the United States so as to prevent the property from passing to the estate of a subsequently filed bankruptcy and to preclude the bankruptcy court's jurisdiction over the property. It supports this contention with statements from pre-Code cases on the effect of a levy on property under the Internal Revenue Code and with at least one recent case decided under the Bankruptcy Code. *See Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975); *In re Pittsburgh Penguins Partners*, 598 F.2d 1299 (3d Cir. 1979); *United States v. Pittman*, 449 F.2d 623 (7th Cir. 1971); *United States v. Sullivan*, 333 F.2d 100 (3d

Cir. 1964); *United States v. Eiland*, 223 F.2d 118 (4th Cir. 1955); *Bush Gardens, Inc. v. United States*, 10 B.R. 506, 5 B.C.D. 1023' (D.N.J.1979).

The language relied upon includes this statement in the footnotes of *Phelps v. United States, supra*, 421 U.S. at 337 n.8, 95 S.Ct. at 1733, n.8: "In any event, the pre-bankruptcy levy displaced any title of [the debtor] and § 70a(8) is therefore inapplicable." Similar statements can be found in *United States v. Pittman, supra* at 625 ("It is clear that a valid and effective levy under Section 6331(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 6331(a), is 'an absolute appropriation in the law,' and a seizure of the property levied upon, tantamount to a transfer of ownership." (Citations omitted.)); *United States v. Sullivan, supra* at 116 ("[S]eizure is ... tantamount to a transferal of ownership." (Citations omitted.)); *United States v. Eiland, supra* at 12 ("[T]he service of such notice results in what is virtually a transfer to the government of the indebtedness...."); and *In re Pittsburgh Penguins Partners, supra*. Relying on these statements, the Bankruptcy Court for the District of New Jersey recently held in *Bush Gardens, Inc. v. United States, supra* 10 B.R. at 512, 5 B.C.D. at 1026, that since the "United States has a significantly greater interest" approaching that of ownership in property seized prior to bankruptcy for the collection of taxes, that property is not "property of the estate" under Section 541, and therefore not subject to a turnover order of the bankruptcy court. A careful examination of *Phelps* and its progeny, however, convinces the Court that the *Bush Gardens* decision is incorrect and that the debtor does indeed retain an interest sufficient to include the property in question as part of the estate subject to turnover.

The case of *Phelps v. United States, supra*, involved a taxpayer who transferred all of his assets to an assignee for the benefit of creditors. The assignee proceeded to convert the transferred assets to cash. The IRS then served a notice of levy on the assignee, and subsequently, the taxpayer filed bankruptcy. Upon appeal over the propriety of the issuance of a turnover order by the bankruptcy court, the United States Supreme Court held that the bankruptcy court lacked summary jurisdiction to adjudicate the controversy without the government's consent. In reaching its decision, the Court found that "the levy ... created a custodial relationship between the assignee and the United States and thereby reduced the $38,000 to the United States' constructive possession." *Id.* 421 U.S. at 334, 95 S.Ct. at 1731. This made the United States a "bona fide adverse claimant" to the property held by the assignee, which, as it did not consent to adjudication of its claim in bankruptcy court, deprived the court of jurisdiction and entitled the United States to a plenary suit over its rights to the property elsewhere. *Id.* at 334, 95 S.Ct. at 1731. The opinion ends with the statement: "Here the assignee held as custodian for the United States, a bona fide adverse claimant." *Id.* at 337, 95 S.Ct. at 1733.

Initially, it is clear that the holding of *Phelps* has been overruled by the new Code. 28 U.S.C. § 1471 establishes the broad jurisdiction of the new bankruptcy court and disposes of the plenary-summary distinction which controlled jurisdiction under the old Act. There remains, however, the question as to what extent the *Phelps* case and related cases have defined the property interest of the IRS after levy under 26 U.S.C. § 6331 and what continuing effect any such determinations may have on the question now before the Court.

A close scrutiny of the *Phelps* case and other cases cited by the IRS reveals that these cases have never placed squarely in issue the precise extent of the IRS's property interest in levied-upon property. It also becomes apparent that, in spite of the strong language cited by the IRS, no court has ever gone so far as to state that the IRS acquires an absolute ownership interest upon levy. In fact, the provisions of 26 U.S.C. § 6331 *et seq.* governing levy and seizure would suggest just the opposite.

In the *Phelps* case, the Court there referred to the post-levy claim of the govern-

ment as that of a "bona fide adverse claimant." *Id.* at 334, 337, 95 S.Ct. at 1731, 1733. Only the statement made in the footnotes that the "prebankruptcy levy displaced any title of [the debtor]" can be cited to support the contention of the IRS of a claim akin to ownership. In construing the weight and meaning of that statement, it must first be realized that this statement is clearly *dictum*, unnecessary in the Court's holding and unsupported by textual explanation. Secondly, to set it in its proper context, the statement appears to have been made simply to avoid any problem which might have arisen under § 70(a)(8) of the old Act, 11 U.S.C. § 110(a)(8), which vested the title held by an assignee for the benefit of creditors in the trustee. This problem, as with that addressed in the main body of the opinion, also depended on the summary-plenary distinction: in this context, the footnote is not inconsistent with the Court's characterization of the government as an "adverse claimant," a designation which connotes not an absolute ownership, but rather merely a substantial claim to the property.[1] Even if, on the other hand, this statement could be construed to mean that absolute ownership passed to the government upon levy, it would be inconsistent with the Court's characterization of the claim in the body of the opinion [2] and, as will be seen, has not been followed by other courts dealing with the issue.

In *United States v. Pittman, supra,* the IRS levied upon property in the hands of a nominee who, in response to the levy, actually transferred title to the government. The IRS, upon levy and seizure of the real property in question, exerted actual control over the property. The property was never sold for taxes, as required by 26 U.S.C. § 6335, but was actually managed by the IRS.

The issue presented in this case was whether the taxpayer was entitled to credit for taxes equal to the value of the property when it was seized since the property had subsequently depreciated in value. In support of its holding in the case, the court stated that a valid effective levy is an "absolute appropriation in the law tantamount to a transfer of ownership." *Id.* at 625. Thus, since the seizure was "virtually a transfer to the government of the property levied upon," the taxpayer was entitled to credit on the tax equal to the value of the property when seized. Nowhere does it say that the government acquires actual ownership of the property, or that an actual transfer takes place upon levy, but merely that what the government does acquire is a substantial interest in the property which may be analogized, but not absolutely equated, to a transfer of ownership. Furthermore, these statements were made in the factual context of a case where the government did take actual control of the property, received title to the property, and exercised power which equitably should make it accountable as an owner, even though the court never went so far as to call the IRS an owner. The court's statement that "nowhere does the Code indicate any action beyond levy necessary to place title in the government to enable it to convey it," is not inconsistent with a finding that the taxpayer's interest in or title to the property is not cut off until the actual conveyance.

The case of *United States v. Sullivan, supra,* also supports no finding of ownership

---

1. Section 70(a)(8) specifies that it deals with property "deemed to be held by the assignee as an agent of the bankrupt" which is then subject to the summary jurisdiction of the court. When, however, as was held in *Phelps*, the assignee is holding the property as a custodian for a "bona fide adverse claimant", Section 70(a)(8) would not even come into play as the actual facts negate any assumption made under the Act. Furthermore, even Section 70(a)(8) must relate back to the jurisdiction of the Court as defined in Section 2(a), 11 U.S.C.

§ 11(a), which again invokes the summary-plenary distinction. *See* 4A Collier on Bankruptcy ¶ 70.38[1], at 462–3 (14th ed. 1978); 2 Collier on Bankruptcy ¶ 23.06[3], at 506.2–6.3 (14th ed. 1976).

2. The court in *Cross Electric Company, Inc. v. U. S. A.*, 6 B.C.D. 1348, 1350 (W.D.Va.1980), in criticism of the IRS's construction of the *Phelps dicta*, unequivocally stated: "It is inconsistent for a party to hold full legal rights yet only be classified as an adverse claimant."

in the government after levy. In fact, its holding flatly contradicts a finding of ownership, for it held that the government had no right, as would the owner, to exercise contractual rights in an insurance policy which was levied upon. This holding was made in conjunction with the statement, citing as authority, *United States v. Eiland, supra,* that "seizure is . . . tantamount to a transferal of ownership." Again, although it is apparent from this case that substantial rights are transferred to the government upon seizure, it is equally apparent that these rights are not to be equated with absolute ownership.

*United States v. Eiland, supra,* dealt with the question of whether funds levied on by the IRS should be subject to administrative claims of the bankruptcy estate. In essence, this question resolved into whether the IRS had an interest which was perfected as against the claims of a trustee in bankruptcy. The statements made in this opinion, therefore, relate to the status of the government's claim against the trustee. There is no dispute in the case now before the court that, as was held in *Eiland,* the government's claim is perfected against the trustee. Rather, the Court is concerned with the extent of the debtor's continuing rights in the property. The much-quoted statement in *Eiland* that a levy is "virtually a transfer to the government of the indebtedness" is made in the context of explaining the difference between a levy under the Internal Revenue Code and a levy under normal state law procedures. The entire statement is as follows:

> The effect of the federal taxing statutes to which we have referred is to create a statutory attachment and garnishment in which the service of notice provided by statute takes the place of the court process in the ordinary garnishment proceeding . . . There is no necessity for adjudicating the amount of the tax under the statutory proceeding and consequently, the service of such notice results in what is virtually a transfer to the government of the indebtedness, or the amount thereof necessary to pay the tax so that payment to the government pursuant to the

> levy and notice is a complete defense to the debtor against any action brought against him on account of the debt . . . When bankruptcy occurs after the levy and notice have been served upon a debtor of the bankrupt, the trustee in bankruptcy cannot interfere with the rights of the United States thereby perfected before bankruptcy. (Citations omitted)

*Id.* at 121–122. Thus, taken in context, the Court in *Eiland* does not say that a levy is a transfer of ownership, but rather that it establishes a perfected interest in the government by virtue of a simplified and shortened process provided under the Internal Revenue Code.

Finally, the case of *In re Pittsburgh Penguins Partners, supra,* decided after the *Phelps* case, specifically denies the characterization advanced by the IRS. In again dealing with an issue of summary-plenary jurisdiction under Chapter XI of the old Act in the case of a pre-bankruptcy tax levy by the IRS, the Court cites *Phelps* for the proposition that the levy gives the government not only "constructive possession" but a " 'substantial adverse claim' of ownership" sufficient to defeat the bankruptcy court's claim to jurisdiction under Section 311. *Id.* at 1302. It cites the footnote of *Phelps,* which talks about the displacement of title of the debtor as *dictum,* and then further goes on to say that "we need not decide, therefore, the further question whether the levy was effective to transfer full title to the assets to the United States," thereby acknowledging the unsettled state of the law in this area. *Id.* at 1302.

■ Thus, a look at *Phelps* and similar cases convinces this Court that a pre-bankruptcy levy has never been interpreted as a complete transfer of ownership to the IRS. In fact, there exist cases which have more directly dealt with the issue of the extent of the government's interest in property levied upon under the tax laws which, since no subsequent case appears directly to overrule their interpretations, are applicable here. These cases reinforce this Court's belief that a levy operates not to transfer title to

the government, but rather to give it a perfected lien which, considering the statutory rights afforded the government under the Internal Revenue Code, amounts to a substantial interest in the property levied upon. This substantial interest is nevertheless, not equal to a claim of absolute ownership.

The court in *In re Brewster-Raymond*, 344 F.2d 903 (6th Cir. 1965), after determining jurisdiction to be present in the bankruptcy court due to the government's consent, dealt with the question of whether a tax levy passed ownership of the property levied upon to the United States so as to prevent application of Section 57(j) barring the collection of penalties and interest on tax debts from the estate. The Court there held that "the levy of the government against the fund ... did not operate to pass title, but gave the government only a lien against the fund." *Id.* at 910. The court stated:

> Counsel for the United States has cited no authority, nor have we found any, that holds that the United States has anything more than a lien when it levies upon intangible personal property... [T]he levy (in the sense it is used here) is merely one of many means of perfecting a lien. A levy is a seizure of the property of another, but nothing more. It does not in and of itself operate to transfer title to the government.

*Id.* at 910. Since the levy did not operate to pass title of ownership to the United States, Section 57(j) was held to apply and to bar collection of penalties and interest. Among the cases cited by the government and considered by the Court of Appeals for the Sixth Circuit in rendering its decision was *United States v. Eiland, supra.*

*Bennett v. Hunter*, 76 U.S. 326, 9 Wall 326, 19 L.Ed. 672 (1870), a case decided under a much earlier tax law, the reasoning of which, however, has continued applicability today, directly addressed the issue of whether a tax levy on property operated to transfer ownership of property levied upon to the government before an actual sale of that property. In holding that title did not pass until actual sale of the property, the United States Supreme Court said:

> What preceded the sale [the levy] was merely preliminary, and independently of the sale, worked no devestiture [sic] of title. The title, indeed, was forfeited by non-payment of the tax; in other words, it became subject to be vested in the United States and, upon public sale, became actually vested in the United States or in any other purchaser; but not before such public sale. It follows that in the case before us the title remained in the tenant for life with remainder to the defendant in error, at least until sale; though forfeited, in the sense just stated, to the United States.

*Id.* at 336. In noting that the statute allowed the taxpayer to prove payment of the taxes prior to the IRS sale and to receive a release of the property from sale, it concluded that this fact would be inconsistent with a finding that the levy completely divested the owner of title in favor of the United States. A look at the tax statutes now in question, found in 26 U.S.C. § 6331 *et seq.*, reveal the same sort of inconsistency between the rights given the taxpayer upon levy with the position taken by the government that such levy operates as a complete transfer of title to the government.

Upon levy and seizure of property for taxes, the taxpayer is given certain specified rights under the Internal Revenue Code. Under 26 U.S.C. § 6335, the taxpayer is given the right to receive notice of the seizure and sale. 26 U.S.C. § 6337(a) allows the taxpayer to pay the tax before the sale and have the property restored to him. Section 6337(b) allows redemption of the seized property after sale within 120 days of the sale. 26 U.S.C. § 6342 requires that the taxpayer receive any surplus generated from the sale of the property over and above the taxes due. All of these rights given to the taxpayer are consistent with the rights normally given to an owner of property upon seizure and sale of his property by a lienholder on the property. They are, however, inconsistent with the conten-

tion that the United States becomes the owner of the property upon seizure. In fact, as evidenced by the *Pittman* and *Sullivan* cases, the government is not given the right to exercise the control, power and rights of an owner over property which has been levied upon and seized. Rather, as noted in *In re Brewster-Raymond, supra,* the levy and seizure is merely a way of perfecting the government's interest in the property which insures, by the temporary taking of possession, that the property will be safeguarded and available for sale in satisfaction of the tax. 26 U.S.C. § 6335 specifically requires that a sale of the seized property be noticed "as soon as practicable after seizure" and that the sale occur within 10 to 40 days after giving public notice. No authority is given for retention of the property, for the use of the property, or for the exercise of other rights normally associated with ownership. That the government needs no further authority to transfer title to the purchaser upon sale does not mean, as addressed in *Bennett v. Hunter, supra,* that the title or ownership of the taxpayer is divested at any time before that sale. In actuality, further proceedings are clearly necessary subsequent to the levy before title passes as noted in 26 U.S.C. § 6337(a). Furthermore, 26 U.S.C. §§ 6335, 6336, and 6337 all refer to the taxpayer as the "owner". These observations support the Court's conclusion today that although the government is given substantial rights under the Code to protect its tax lien and to derive payment of that tax from the sale of the levied upon property, its interest is nonetheless a lien: something less than absolute ownership.

Since the government obtained rights in the property not amounting to absolute ownership, and since the taxpayer-debtor has continuing rights to the property under the tax statutes, the next question is whether the debtor's interest is "property of the estate" which can be subject to turnover under Section 542.

*Bush Gardens, Inc. v. United States, supra,* although acknowledging the government's rights in the levied-upon property to be something less than ownership, held that

as the "United States has a significantly greater interest" in the property seized prior to bankruptcy than does the debtor, that property is not property of the estate. In reaching this conclusion, the court based its decision on *Phelps* and other cases decided under the more restricted bankruptcy jurisdiction defined in former law. The court acknowledged rights of the debtor in the property, but then proceeded to apply a balancing test somewhat akin to the old plenary-summary adverse interest balancing tests which were the hallmark of jurisdiction under prior law.

■ The reasoning of this case, in light of the expanded jurisdiction of the bankruptcy court, appears incorrect. As noted in *Cross Electric Company, Inc. v. United States of America, supra* at 1349:

> The underlying theory of 11 U.S.C. § 541(a)(1) is to bring into the estate all interests of the debtor in property as of the date the case is commenced. There is no balancing test involved. Those creditors who hold a significantly greater interest in a particular item cannot automatically have the item excluded from the estate if the debtor still retains some interest in it. (Citations omitted.)

*Accord, In re Barsky,* 6 B.R. 624 (Bkrtcy., E.D.Pa.1980); *In re Troy Industrial Catering Service,* 2 B.R. 521 (Bkrtcy., E.D.Mich. 1980); *In re Aurora Cord and Cable Company, Inc.,* 2 B.R. 342 (Bkrtcy., N.D.Ill.1980). Thus, whether the United States has a greater interest in levied upon property at the filing of bankruptcy is immaterial, for as long as the debtor has an interest, that interest will fit into the pervasive definition of Section 541 to constitute "property of the estate." The "legal or equitable interests" remaining in the debtor in the property at hand include title to the property, or legal ownership until sale, the right to notice, the right to pay the tax before sale and have the property released, the right to redeem after the sale, and the right to receive any surplus generated from the sale. These interests are clearly property of the estate under Section 541. Indeed, the legislative

history states that even mere title in the debtor is in itself enough to invoke the jurisdiction of the bankruptcy court under Section 541. *See* H.R.Rep.No.95–595, *supra* at 367; S.Rep.No.95–989, *supra* at 82. The conclusion that the property concerned comes within the definition of Section 541 and is "property of the estate," subject to the jurisdiction of the bankruptcy court, leaves the question of whether the Court should order turnover under Section 542 of the Code.

*In re Avery Health Center, Inc.*, 8 B.R. 1016 (W.D.N.Y.1981), *In re Winfrey Structural Concrete Co.*, 5 B.R. 389 (D.Col.1980), and *In re Parker GMC Truck Sales, Inc.*, 6 B.C.D. 899 (S.D.Ind.1980), after acknowledging that the debtor had a continuing interest in the property subsequent to a tax levy by the IRS, declined to order turnover based upon the reasoning that the interest acquired by the bankruptcy estate did not amount to a right to use, sale, lease, or possess the property so as to subject that property to turnover. These courts held that as the debtor would not normally be entitled to possession of the property without first paying the tax, the bankruptcy court cannot compel a turnover under Section 542 without fulfillment of that same condition. However, examination of the rights of the debtor and of the powers given the debtor-in-possession pursuant to the interaction of Section 542, 363 and 361 of the Code convinces this Court that the Code grants the bankruptcy court the flexibility to balance fairly competing rights in the property and to order a turnover upon the debtor's provision for adequate protection of the government's interest in the property.

All of the cases cited above took as their starting point statements made in the legislative history concerning the extent of the debtor's interest under Section 541. Both the House and Senate Reports state:

> Though this paragraph will include choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case . . . He [the trustee] could take no greater rights than the debtor himself had.

H.R.Rep.No.95–595, *supra* at 367–368; S.Rep.No.95–989, *supra* at 82, U.S.Code Cong. & Admin.News 1978, at 5868, 6323. The further statement was then made in the House Debates that

> [O]nly the debtor's interest in such property becomes property of the estate. If the debtor holds bare legal title or holds property in trust for another, only those rights which the debtor would have otherwise had emanating from such interest pass to the estate under section 541.

H.R. Debate, 124 Cong.Rec. H11047–117, at H11096 (daily ed. Sept. 28, 1978). From these statements, it was reasoned that the debtor's rights in bankruptcy over property, including its use, sale and lease under Section 363, must be defined by reference to applicable non-bankruptcy law, in this case, the Internal Revenue Code. Thus, only the rights given the debtor under the Internal Revenue Code would constitute the rights given the debtor-in-possession or trustee upon the filing of bankruptcy. Since these rights do not include a right to possession or use of the property prior to the payment of the tax owed, these courts concluded that the trustee would be similarly limited in its allowed control over or use of the property.

In reaching this conclusion, the decisions in *In re Avery Health Center, Inc., supra, In re Winfrey Structural Concrete Co., supra,* and *In re Parker GMC Truck Sales, Inc., supra,* failed to focus their attention on the rights given the debtor-in-possession or trustee under the Bankruptcy Code and instead focused only on the rights given the debtor outside of bankruptcy in the Internal Revenue Code. The rights given upon the filing of bankruptcy under the Code, however, make it clear that although the debtor's interest in property brought into the estate cannot be expanded, its rights concerning the use, sale, lease and possession of that property may be altered, upon compliance with certain conditions, by express allowance in the Code.

It is initially true that despite the pervasive reach of Section 541, it was not "intended to expand the debtor's rights against others," or in other words, it brings "only the debtor's interest in such property" into the estate. Thus, as is the case here, where the debtor has only a limited interest in the property in question upon the commencement of the case, only that limited equitable or legal interest comes into the estate. The mere fact that bankruptcy was filed does not work to expand the interest of the debtor in property or concomitantly reduce or impair the rights of another entity holding an interest in that property. On the other hand, an interest in property which falls within the definition of "property of the estate" and thus, within the jurisdiction of the bankruptcy court, subjects that property, in its entirety, to other provisions of the Bankruptcy Code and specifically to rights given to the debtor-in-possession or trustee under the Code. It is clear, for instance, that property and an entity claiming an interest in it become subject to the automatic stay of section 362 [3] and to the strong-arm and preference powers of the trustee or debtor-in-possession found in Sections 544, 545, 547, and 548. Likewise, no matter how limited the pre-bankruptcy rights and interests of the debtor in certain property, that property, once determined to be property of the estate, is subject to the rights given the debtor-in-possession or trustee in bankruptcy as found in Sections 542, 543, 363, and 365 of the Code.[4] These rights are independent of any rights existing in the debtor previous to the filing of bankruptcy. They are designed to be exercised consistent with fair balancing and protection of the rights of all entities claiming an interest in the property.

Section 542(a) allows for turnover of "property that the trustee may use, sell, or lease under section 363 of this title." The only relevant limitation on this authority to compel turnover arises when the property in question "is of inconsequential value or benefit to the estate." [5] Under Section 363, the trustee or debtor-in-possession may use, sell, or lease "property of the estate" after notice and a hearing if done other than in the ordinary course of business or without notice and a hearing if done in the ordinary course of business. This authority to use, sell, or lease property of the estate is limited by subsections 363(d) and (e). Subsection 363(d) requires this authority to be exercised consistent with any relief from the stay given under Section 362(c), (d), (e), or (f). The implications of this limitation are obvious. Subsection 363(e) further limits the use, sale and lease of property by interposing the requirement of adequate protection as further elucidated in Section 361. Section 363 establishes, except in the case of cash collateral, the burden on an entity having an interest in the property being used, sold or leased or proposed to be used, sold or leased, to request the Court to prohibit or otherwise condition the exercise of the Section 363 authority by the trustee or debtor-in-possession so as to insure adequate protection of its interest. Once this request is made, the burden then shifts, by terms of Section 363(d), to the trustee or debtor-in-possession to prove that the entity is adequately protected before further authority over the property can be exercised.

■ A debtor's right to possession under § 542, then, is dependent upon a weighing of equities in bankruptcy and not simply upon non-bankruptcy definitions of property interest. To say that a debtor is not

---

3. Even the Court in *In re Avery Health Center, Inc., supra* at 1020, recognized the probable applicability of Section 362 to the IRS despite its failure to allow turnover.

4. This application of the rights and powers given in bankruptcy over others holding interests in the property concerned was recognized in *In re Barsky, supra* at 627, where the Court noted:
 By the levy, the [taxing authority] has acquired the right to sell the debtors' property to satisfy its tax lien. That right is, however, subordinate to the rights granted the trustee by Section 542 and 547 of the Bankruptcy Code.

5. Other limitations on the turnover power as outlined in subsections (b), (c), and (d), of Section 542 are clearly inapplicable to the case on hand.

entitled to a Section 542 turnover order because the debtor would not be entitled to possession absent bankruptcy is to read Section 542 out of the law. The bankruptcy court is, instead, charged with balancing the respective interests in the property against the bankruptcy standards of adequate protection and other cause. The fact that the creditor may have a "significantly greater interest" in the property than the debtor provides no bar to the right of the debtor-in-possession to compel a turnover. Rather, the extent of the creditor's interest in the property is relevant only in the context of determining adequate protection or entitlement to relief from the stay, if requested. Thus, where a greater interest is held by the creditor, a greater burden may ultimately be placed on the debtor-in-possession, once the creditor raises the issues of adequate protection and relief from the stay, to convince the court that in light of the extensive interest of that entity, the use or disposal of the collateral as proposed, or in this case, the turnover of possession under the conditions proposed, meets the standard of adequate protection.[6]

■ In the present case, because the debtor had a cognizable interest in the property levied upon pre-bankruptcy so as to bring that interest into the estate under Section 541, that property is then subject to the debtor-in-possession's right to use, sale or lease the property under Section 363 which therefore allows invocation of the right to compel turnover under Section 542 unless limitations set on these rights in the Bankruptcy Code apply. The Court looks not to the status of the rights of possession prior to the filing of the bankruptcy as given in the Internal Revenue Code, but rather to the rights given in bankruptcy to compel a turnover of possession. Thus, upon a balancing of the rights of the debtor and the IRS here, subject to the requirement of providing adequate protection to the IRS's interest, a turnover is appropriate.

As previously noted, this right to turnover is limited by the requirement in Section 542 that the property be of more than inconsequential value or benefit to the estate. Here, although the market value of the interest still held by the debtor in the property levied upon may be small, it is clear that the benefit to the estate, considering that what is involved is all of the property necessary to run the business, is much greater than inconsequential. As stated in 4 Collier on Bankruptcy ¶ 542.02, at 542–7 n.5 (15th ed. 1980):

> This language should be interpreted to excuse turnover only if the property is of both inconsequential value and inconsequential benefit to the estate. Thus, property of little value but of great benefit to the estate should be turned over.

Therefore, this limitation found in Section 542 has no application here.

The Court's conclusion today is not only consistent with the plain statutory provisions of the Code, but also with its spirit as well. Chapter 11 was designed to rearrange and balance the relative rights of debtor and creditor so as to enable the debtor to get back on his feet and thereby benefit all of his creditors instead of just one, as would otherwise be the case here. As recognized in *Cross Electric Company, Inc. v. United States of America, supra,* at 1349:

> The purpose of Chapter 11 proceedings is to provide an arrangement in which a company has the opportunity to rehabilitate its business operations and to become a profit making company despite its past financial difficulties. There is a strong public policy which favors rehabilitation of failing concerns to make them viable contributors to society once again, rather than liquidating the companies quickly to turn over a reduced sum to all creditors.

6. It may be that the statute, as written, requires turnover without reference to the interest of an entity in possession of the property unless that entity timely requests under Section 363(e) the finding of adequate protection or relief from the stay under Section 362(d). 4

Collier on Bankruptcy § 542.02, at 542–6 (15th ed. 1980) says: "The better view is that turnover must be tendered immediately after commencement of the case but that adequate protection is a condition precedent to turnover *if demanded by the creditor.*" (Emphasis added.)

Under the rehabilitative plan which is approved by the court, the debtor can, hopefully, pay off all of its creditors in full and continue to be an asset to the community. (Citations omitted.)

The turnover power given the debtor-in-possession in Section 542 provides it with the opportunity to attempt to fulfill the purpose of Chapter 11. As has been recognized in similar circumstances by other courts:

> The turnover order in the instant case is particularly appropriate in light of the equitable power of this court ... and the spirit behind corporate reorganization. If the IRS is permitted to retain the debtor's assets, it is undisputed that the debtor will be forced into liquidation. The essence of Chapter 11, however, is to prevent the unnecessary dismemberment of viable corporations and to provide a maximum distribution to creditors who would be likely to receive nothing in the event of liquidation.

Allowing the property levied upon by Internal Revenue Service to be retained by them effectively decides that the debtor is barred from proposing a plan of reorganization and in satisfaction of creditors. It is clear from the legislative history of the Bankruptcy Reform Act that Congress was aware of situations where giving a secured or lien creditor an absolute right to its possessory interests might be seriously detrimental to the rehabilitation of the debtor. Therefore section 361 was enacted to provide the means by which conflicting rights in the debtor's property may be protected.

*In re Aurora Cord and Cable Company, Inc., supra* at 346. *In re Barksy, supra* at 627.

In the case at hand, this reasoning and the application of Section 361 through Section 363(e) are particularly appropriate in light of the circumstances presented. As the Court has previously analyzed, the IRS is not the owner of the property levied upon, but is merely a lienholder endowed with extraordinary statutory powers. Nonetheless, as a lienholder, and by terms of the Internal Revenue Code, the IRS is only entitled to possession of the property in question so as to safeguard it until sold for the payment of the taxes due. The IRS has no right to use the property. *See* 26 U.S.C. § 6335. *See also, United States v. Pittman, supra.* Nor can it exercise other rights normally given an owner. *See United States v. Sullivan, supra.* If then, the debtor can, by providing "adequate protection", insure payment of the debt with as much certainty as would have followed from the retention of the property by the IRS, the IRS has in essence lost nothing, and suffered no dilution or impairment of its rights, while the debtor has obtained a substantial benefit in being able to continue its business and hopefully provide a greater dividend to all creditors involved.

### ORDER

Pursuant to this memorandum decision, plaintiff's motion for summary judgment is granted and turnover is ordered under 11 U.S.C. § 542 subject to either a stipulation of the parties or a finding by this Court that adequate protection of the Internal Revenue Service's interest has been provided.